UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
C.A. # 05-10154-NG

RODERICK DIAZ

v.

DAVID HIGGINS ET AL.

MEMORANDUM IN SUPPORT OF
OPPOSITION TO MOTIONS
TO DISMISS

FACTS:

The plaintiff, Roderick Diaz, is a black male who was born in the Republic of Trinidad & Tobago and is a member of the protected class. Plaintiff was fifty-seven years of age at the time of the filing of the Charge at the MCAD.

Plaintiff began his employment with respondent in 1986 as a Motor Equipment Repairman in 1986. Prior to his employment with respondent, plaintiff had had more than twenty years of experience as an automobile mechanic, with various employers.

On 4th. November, '99, the City posted a Notice for a position as Motor Equipment Repair Foreman ("MERF"). Plaintiff, by virtue of his experience and performance, was the most qualified for the position. In addition to his seniority, the Plaintiff's expertise in the field, met and/or exceeded that of any other candidate for the position. On various occasions, including in November, '99, plaintiff had served as Acting Foreman and satisfactorily performed the duties of MERF.

Prior to the plaintiff's application for the position, on 9th. November, '99, the practice at the City was to award the position of MERF to the most senior person.

On 30th. December, '99, the City appointed James Monaghan, a white male to the position of MERF.

It was the defendant Higgins, who recommended to the Commissioner, Mr. Cassazza, also a white male, that the position be awarded to this white male, who was not as qualified as plaintiff.

Plaintiff filed a grievance with the Union over the rejection but the decision of the employer was not reversed.

After the filing of the grievance, defendant Higgins retaliated against the plaintiff by refusing to give him any more "Acting" assignments. In fact, Higgins had plaintiff ousted from the "Acting" foreman position upon the plaintiff's engaging of an attorney to challenge the discriminatory denial of his application for the foreman's position.

Plaintiff filed a Charge at the MCAD over the discriminatory rejection.

Defendants used the pretext of plaintiff's alleged poor performance in an Interview Process to deny his application for the foreman's position. This very interview process was itself discriminatory, in its creation, by defendant Higgins and implementation. The City acquiesced in, and ratified, the implementation of this discriminatory Interview Process.

Defendants did discriminate against the plaintiff in the award of overtime work. There were occasions on which overtime was available but the defendants did not notify plaintiff. The overtime work was given primarily to white persons by white supervisors.

Plaintiff again applied for a foreman's position in '01, when a position was posted.

At some time on or about $18^{th.December}$, '01, defendant Higgins denied the position to plaintiff and recommended to the Commissioner and the City, that the position be awarded to a white male, who was not as qualified as plaintiff. The defendants, since that date, have engaged in a continuing course of conduct to conceal and cover up the facts with regard to their discriminatory acts and to falsely testify as to their motivation for the denial of the positions to plaintiff

The City, by virtue of its selection of Monaghan, deviated from its practice of appointing the most senior person.

Defendant City of Boston, is a corporation duly organized and doing business under the laws of the Commonwealth of Massachusetts. The City manages and operates the Department of Public Works and its Central Fleet

Maintenance ("CFM") and is responsible for its administration and the enforcement of its personnel practices, including but not limited to personnel selection procedures.

The City has promulgated an Affirmative Action Plan by which it has pledged that it would observe fair employment practices in all phases of its employment procedures.

The City is a recipient of federal funds and, is required as a condition of the receipt of said funds, to maintain an Affirmative Action Plan ("AAP"), including, the implementation of procedures to monitor adherence by supervisory officials and managers to its provisions, in the enforcement of personnel procedures.

The plaintiff, in commencing his employment with the City, in December, 1986, and in remaining in such employ, relied on the representations relative to equal employment practices. Plaintiff was seeking long term employment and anticipated promotions in the normal course.

Plaintiff was qualified for his employment and competently discharged his duties.

Defendant David Higgins is a white male citizen of the United States. At all times relevant to this action, Higgins was employed by the City as Director of CFM of the DPW and acted under colour of law. Higgins is being sued individually and in his capacity as Director of CFM.

The subjective employment practices of supervisory officials, most of whom were white and the use of non-validated selection criteria, including but not limited to an ad hoc Interview Process, which was not formally approved by the City's Office of Human Resources nor consistent with the mandates of the AAP, produced a disparate impact on members of plaintiff's protected class. The tangible result of this disparate impact was that there was a selection rate of black employees for the position of Foreman which was in contravention of the provisions of 29 CFR S.1607.4(D).

The continuing discriminatory and retaliatory denial of promotions to

plaintiff and the refusal of the defendant Higgins to place plaintiff even in a "temporary" position as Foreman, caused the workplace to be contaminated with racial discrimination, harassment and retaliation and to adversely affect the terms and conditions of employment.

Plaintiff came to realize that despite his many years of dedicated service to the City, it was extremely unlikely that the defendants would promote him; that his role would continue to be to train junior white males who would then be promoted to the foreman's position and that he had no future at CFM.

The racial contamination in the workplace produced conditions too onerous and oppressive and caused plaintiff to involuntarily separate from employment with the City on or about $19^{th.March}$, '04.

All conditions precedent to the institution of this action have occurred and have been fulfilled.

ARGUMENT:
## THE PLAINTIFF HAS SHOWN FACTS LEGALLY SUFFICIENT TO WARRANT RELIEF

The well pleaded facts of the Verified Complaint set forth meritorious claims under G.L.c.151B(4); 151B(4); S.1981' Title VII and at common law.

Defendants have failed to meet their burden of showing that plaintiff can prove no set of facts which would entitle him to relief.

PRIMA FACIE CASE UNDER C.151B4 AGAINST DEFENDANTS:

**Defendant Higgins:**

### STANDARD TO BE APPLIED BY THE COURT IN RULING OF A MOTION TO DISMISS

In the presentment and adjudication of a Rule 12(b)(6) motion, the burden of demonstrating that no claim has been stated, rests with the movant. Johnsrud v. Carter, 620 F.2d 29 (3d.Cir., 1980). The court must presume all factual allegations in the complaint to be true and must draw all reasonable inferences in favour of the non-movant. Garita Hotel Ltd. v. Ponce Fed. Bank, 958 F.2d 15 ($1^{st.Cir.}$, 1992).

The allegations of the complaint are to be liberally construed. Duncan v.

Leeds, 742 F.2d 989 (6th.Cir., '84). The court must deny the motion "unless it appears to a certainty that the plaintiff can prove no set of facts entitling him to relief". Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

The appellate court will review de novo, a dismissal of a complaint, where the lower court has terminated the action on a facial challenge based on the complaint supplemented by disputed facts gleaned from the record. Thopson v. County of Franklin, 15 F.3d 245, 249 (2nd.Cir., 1994).

On a 12(b)(6) motion, the court may not consider materials outside of the facts of the complaint.

If the court intends to consider materials, extraneous to the verified complaint, it must provide express notice that it will convert the motion to one for summary judgment. Jones v. Auto Ins. Co., 917 F.2d 1528, 1532 (11th.Cir., 1990).

It is not necessary for the plaintiff, as a prerequisite to raising claims under S.1981, to first resort to the administrative procedures of the MCAD and EEOC. Stewart v. Wappingers Central School Dist., 437 F.Supp.250 (S.D.N.Y., 1977). Thus, the filing of a Charge with administrative agencies, is not a jurisdictional prerequisite to presenting claims under S.1981 against defendant Higgins. Goss v. Revlon, Inc., 548 F.2d 405 (2nd.Cir., 1976).

For purposes of the adjudication of the instant motion, the court is required to accept the plaintiff's representation that he did resort to the administrative mechanism.

If the court determines to consider extraneous materials, the position of defendant Higgins is not advanced. The name of the defendant DAVID HIGGINS/DIRECTOR OF CFM appears prominently in the copy of the Charge (annexed by defendants hereto as an Exhibit) preceded by the City of Boston DPW, under the rubric:

<u>Named is the employer, labor organization, employment agency or state/local government agency who discriminated against me:</u>

The defendant's claim that he was never named as an individual respondent is, at best, specious, and is contradicted by the Exhibit on which it

would have this court rely. Further, it surpasses disingenuity for the defendant Higgins to postulate that he had no notice of and opportunity to conciliate the Charge. The record will show that the defendant Higgins testified on behalf of the City in a properly noticed Rule 30(b)(6) deposition of the City.

Defendant Higgins, at no time during the proceedings at MCAD offered to "conciliate" the charges. In fact, Higgins and the City, denied liability and sought to vigorously contest the allegations of the Charge.

In Collin v. Rector & Bd. of Visitors of the Univ. of Virginia, 873 F.Supp. 1008, the white male former assistant professor brought an action against the university, its board and the Dean and faculty members of the urban planning department. The District Court denied the motion to dismiss the complaint as to the Dean Porter, even though he had not been named in the EEOC complaint, on the ground that "..he was substantially identified with the Dept. of Urban Planning and the Dept. of Urban Planning was named in the EEOC complaint along with the Board ..". Id. at 1012.

Thus, even if the court were to credit the assertion that defendant Higgins was not named in the MCAD Charge, it is clear from the above cited authority, that Higgins falls under the exception of a defendant "substantially identified " with an agency, so as to justify the waiver of the requirement that he be "nlamed" in the Charge. Collin, supra, citing, Brewster v. Shockley, 554 F.Supp., 365, 367 (W.D.Va., 1983).

Defendant Higgins apparently misapprehends the state of the law when he contends that since the plaintiff's claims asserted against him in his "official" capacity, "duplicate" claims asserted against the City, they should be dismissed "in their entirety".

First, plaintiff at paragraph 31(d) of the Verified Complaint, presents a claim for interference with contract of employment with the City of Boston.

The law is that a plaintiff proves such a claim by showing: He had an advantageous employment relationship with the employer; defendant knowingly induced the employer to break that relationship; the defendant's interference was

intentional and improperly motivated and the employee suffered harm. Weber v. Community Teamwork, Inc, 434 Mass.761, 781, 752 N.E.2d 700, 715 ('01); Sklar v. Beth Israel Deaconess Med. Ctr., 59 Mass.App.Ct. 550, 797 N.E.2d 381 ('03).

The facts of the Complaint show that the defendant Higgins, out of discriminatory and retaliatory motives, interfered with plaintiff's contract of employment; caused the workplace to be contaminated with racial discrimination, racial harassment and retaliation, adversely affected the terms and conditions o f plaintiff's employment, and as a result, caused the plaintiff to be subjected to constructive termination.

Constructive termination comes about when the employer and supervisory officials, create or permit the creation of, an atmosphere of harassment or hostility which rendered working conditions intolerable. Taylor v. Jones, 489 F.Supp. 498 (E.D. Ark., 1980), aff'd, in relevant part following new trial, 653 F.2d 1193, ($8^{th.Cir}$., 1981)(defendant's history of employing disproportionately few blacks and the prevalence of racial jokes and slurs combined with defendant's inaction to correct pervasive prejudice and poor treatment which plaintiff had to endure, established constructive discharge).

The phrase "terms and conditions of employment" cover the psychological and emotional work environment. Rogers v. EEOC, 454 F.2d 234, 238-9 ($5^{th.Cir}$., 1971).

It is sufficient to state a claim for constructive termination if the plaintiff shows that the employer created working conditions which were so difficult or unpleasant that a reasonable person would resign. The court must examine the employee's work environment and the employee's state of mind. Nolan v. Cleland, 686 F.2d 806 ($9^{th.Cir}$., 1982); EEOC v Hay Associates, 545 F.Supp.1064 (E.D.Pa., 1982)(intolerable conditions may exist even though plaintiff is treated in a "civil, businesslike and gentlemanly fashion"- so long as a reasonable person would have been justified under the circumstances in quitting, the plaintiff could be considered constructively discharged).

In **Collin, supra,** the Court ruled that "Where a fellow employee

intentionally interferes with the right of a coworker to make or enforce a contract with the employer that interference is based on illegal discrimination, the employee's conduct is actionable under S.1981., **Id., at 1015,** citing Kolb v. Ohio Dept. of Mental Retardation & Dev. Dis., 721 F.Supp.885, 891-2 (N.D.Ohio, 1989) ... Tillman v. Wheaton-Haven, 517 F.2d 1141, 1146 (4th.Cir., 1975)(corporate directors can be liable under S.1981 where they cause corporation to intentionally infringe protected rights).

Plaintiff is seeking to hold defendant Higgins, personally liable, for his tortious acts. The law of S.1981 permits such a claim.

In addition, the defendant Higgins is liable, under C.151B(4) for his discriminatory actions, as an "aider and abetter" of the discrimination practiced by the City of Boston and for his acts of retaliation. C.151B(4)(4).

There is no legal basis for Higgins' motion to dismiss and the motion should be denied, with prejudice and costs, including reasonable attorney's fees, to the plaintiff.

**LIABILITY OF THE CITY OF BOSTON:**

Plaintiff repeats and incorporates by reference, the arguments advanced with respect to his Opposition to Motion To Dismiss of defendant Higgins.

First, plaintiff was not required to present any allegations to MCAD as a prerequisite to his claims arising under S.1981.

Second, the face of the Charge indicates that the plaintiff was complaining both of discriminatory denial of the promotion, **and,** of retaliation. Indeed, in the language which appears beneath the sub-heading: **The particulars are:** The Charge indicates: I, Roderick Diaz, the Complainant, believe that I was discriminated against by C-Boston DPW, on the basis of Other. This is a violation of M.G.L. 151B Section 4 Paragraph 4 and Title VII.

It is significant that reference is made to C.151B S. 4, the prohibition against discrimination in general, and not, to C.151B (4)(4), the section relative to "retaliation".

It should be remembered that lay persons who report to the offices of the

MCAD to seek the issuance of Charges, do not draft the language of the Charge but merely recount the discriminatory acts and rely on the expertise of MCAD personnel to draft a Charge which properly reflects the allegations and fits in the appropriate legal compartments. It would be a gross travesty of justice if the plaintiff were to be denied his day in court on a claim for discrimination, because the defendants are permitted to cynically dissect and carve up a Charge which clearly seeks to address discrmination in the form of the denial of the p romotion as well as retaliation.

It cannot be that the Legislature and Congress intended that the machinery of the MCAD and EEOC which was designed to bring about resolution, short resort to courts of law, would be twisted into a legal maze which uninformed lay persons traversed at their peril.

The City of Boston has not and cannot demonstrate any harm by the raising of both claims, since it was aware, during the MCAD process, that the plaintiff was presenting evidence on both claims.

In any event, at this juncture, the Court should deny the motion, because the well pleaded facts of the Verified Complaint, show, without doubt, that the plaintiff is entitled to relief, against both the City and Higgins, for numerous acts of racial discrimination and retaliation.

CONCLUSION:

For the reasons advanced above, the plaintiff urges that the Motions To Dismiss, of the City and Higgins, be denied with prejudice and with costs, including reasonable attorney's fees, to the plaintiff.

Respectfully Submitted,

W.Kendall
136 Warren Street
Roxbury, Ma.02119
(617) 442-6130