UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. # 05-10154-NG

RODERICK DIAZ

v.

DAVID HIGGINS ET AL.

MEMORANDUM IN SUPPORT
OF MOTION TO STRIKE AND
FOR FURTHER ANSWERS TO
DISCOVERY OF PLAINTIFF

FACTS:

The plaintiff, Roderick Diaz, is a black male who was born in the Republic of Trinidad & Tobago and is a member of the protected class. Plaintiff was fifty-seven years of age at the time of the filing of the Charge at the MCAD.

Plaintiff began his employment with respondent in 1986 as a Motor Equipment Repairman in 1986. Prior to his employment with respondent, plaintiff had had more than twenty years of experience as an automobile mechanic, with various employers.

On 4th.November, '99, the City posted a Notice for a position as Motor Equipment Repair Foreman ("MERF"). Plaintiff, by virtue of his experience and performance, was the most qualified for the position. In addition to his seniority, the Plaintiff's expertise in the field, met and/or exceeded that of any other candidate for the position. On various occasions, including in November, '99, plaintiff had served as Acting Foreman and satisfactorily performed the duties of MERF.

Prior to the plaintiff's application for the position, on 9th.November, '99, the practice at the City was to award the position of MERF to the most senior person.

On 30[th.December], '99, the City appointed James Monaghan, a white male to the position of MERF.

It was the defendant Higgins, who recommended to the Commissioner, Mr.Cassazza, also a white male, that the position be awarded to this white male, who was not as qualified as plaintiff.

Plaintiff filed a grievance with the Union over the rejection but the decision of the employer was not reversed.

After the filing of the grievance, defendant Higgins retaliated against the plaintiff by refusing to give him any more "Acting" assignments. In fact, Higgins had plaintiff ousted from the "Acting" foreman position upon the plaintiff's engaging of an attorney to challenge the discriminatory denial of his application for the foreman's position.

Plaintiff filed a Charge at the MCAD over the discriminatory rejection.

Defendants used the pretext of plaintiff's alleged poor performance in an Interview Process to deny his application for the foreman's position. This very interview process was itself discriminatory, in its creation, by defendant Higgins and implementation. The City acquiesced in, and ratified, the implementation of this discriminatory Interview Process.

Defendants did discriminate against the plaintiff in the award of overtime work. There were occasions on which overtime was available but the defendants did not notify plaintiff. The overtime work was given primarily to white persons by white supervisors.

Plaintiff again applied for a foreman's position in '01, when a position was posted.

At some time on or about 18[th.December], '01, defendant Higgins denied the position to plaintiff and recommended to the Commissioner and the City, that the position be awarded to a white male, who was not as qualified as plaintiff. The defendants, since that date, have engaged in a continuing course of conduct to conceal and cover up the facts with regard to their discriminatory acts and to falsely testify as to their motivation for the denial of the positions to plaintiff

The City, by virtue of its selection of Monaghan, deviated from its practice of appointing the most senior person.

2

Defendant City of Boston, is a corporation duly organized and doing business under the laws of the Commonwealth of Massachusetts. The City manages and operates the Department of Public Works and its Central Fleet Maintenance ("CFM") and is responsible for its administration and the enforcement of its personnel practices, including but not limited to personnel selection procedures.

The City has promulgated an Affirmative Action Plan by which it has pledged that it would observe fair employment practices in all phases of its employment procedures.

The City is a recipient of federal funds and, is required as a condition of the receipt of said funds, to maintain an Affirmative Action Plan ("AAP"), including, the implementation of procedures to monitor adherence by supervisory officials and managers to its provisions, in the enforcement of personnel procedures.

The plaintiff, in commencing his employment with the City, in December, 1986, and in remaining in such employ, relied on the representations relative to equal employment practices. Plaintiff was seeking long term employment and anticipated promotions in the normal course.

Plaintiff was qualified for his employment and competently discharged his duties.

Defendant David Higgins is a white male citizen of the United States. At all times relevant to this action, Higgins was employed by the City as Director of CFM of the DPW and acted under colour of law. Higgins is being sued individually and in his capacity as Director of CFM.

The subjective employment practices of supervisory officials, most of whom were white and the use of non-validated selection criteria, including but not limited to an ad hoc Interview Process, which was not formally approved by the City's Office of Human Resources nor consistent with the mandates of the AAP, produced a disparate impact on members of plaintiff's protected class. The tangible result of this disparate impact was that there was a selection rate of black employees for the position of Foreman which was in contravention of the provisions of 29 CFR S.1607.4(D).

The continuing discriminatory and retaliatory denial of promotions to plaintiff and the refusal of the defendant Higgins to place plaintiff even in a "temporary" position as Foreman, caused the workplace to be contaminated with racial discrimination,

3

harassment and retaliation and to adversely affect the terms and conditions of employment.

Plaintiff came to realize that despite his many years of dedicated service to the City, it was extremely unlikely that the defendants would promote him; that his role would continue to be to train junior white males who would then be promoted to the foreman's position and that he had no future at CFM.

The racial contamination in the workplace produced conditions too onerous and oppressive and caused plaintiff to involuntarily separate from employment with the City on or about 19th.March, '04.

ISSUE: IS THE INFORMATION SOUGHT IN THE PLAINTIFF'S DISCOVERY
REQUESTS RELEVANT TO THE MATERIAL ISSUES

ARGUMENT: IT IS CLEAR FROM THE WELL-PLEADED FACTS ALLEGING
DISCRIMINATION AND RETALIATION, THAT PLAINTIFF IS
ENTITLED TO THE INFORMATION TO PROVE THE PRIMA
FACIE CASE AND TO NARROW THE ISSUES FOR TRIAL

COMPLIANCE WITH THE REQUIREMENTS OF
L.R.37.1(A)

The parties, consistent with the requirements of L.R.37.1(A) conferred with a view to narrowing the issues relative to the discovery dispute. The plaintiff, after the required Conference, sent a five page document to the defendant, in which he provided legal authority for the demand for further answers, as well as a detailed explanation as to the manner in which he intended to make use the further information.

The defendant has not provided the further information sought.

The defendant relied on broad assertions that the information sought by the plaintiff was vague, burdensome, already in the plaintiff's possession and/or not likely to lead to the discovery of admissible evidence.

The plaintiff relies upon and incorporates in this memorandum, the text of the letter to the defendant, under date of 17th.February, '06, marked as Exhibit 2.

**THE INFORMATION SOUGHT IS RELEVANT
TO THE MATERIAL ISSUES**

4

The general rule with regard to discovery is that the term "relevance" is liberally construed. Herbert v. Lando, 441 U.S.153 (1979). Further, it has been said that a demand for discovery is deemed "relevant" if there is any possibility that the information sought may be relevant to the subject matter of the action. Gagne v. Reddy, 104 F.R.D. 454, 456 (D.Mass.,1984) **quoting,** Miller v. Doctor's Gen.Hosp., 76 F.R.D. 136, 138-9 (W.D.Okla.,1977).

The burden of showing that the requested information is not relevant, rests with the opposing party. Flag Fables, Inc. v. Jean Ann[s Country Flags & Crafts, 730 F.Supp.1165, 1186 (D.Mass.,1989).

With regard to the instant motion to compel, the plaintiff has made a clear and concise showing of the use to which he intends to put the information sought. The defendant, conversely, has not set forth any facts which would tend to disprove relevance.

Plaintiff may prevail by showing that he was subjected to disparate treatment; Blare v. Husky Injection Moulding Systems, 419 Mass.437 (1995); Trustees of Health & Hospitals of Boston, Inc. v. MCAD, 65 Mass.App.Ct. 329 (December, '05), or that the subjective employment practices produced disparate impact on members of the protected class. Watson v. Ft.Worth Bank & Trust Co., 487 U.S. 977 (1988); 42 USC S.2000e-2(k)(1).

If the defendant complies fully with the disputed discovery requests, it would tend to narrow, significantly, the issues left for trial.

The defendant has also failed to serve answers to the plaintiff's requests for production.

For the reasons advanced above, the information sought in these requests is relevant to the material issues and therefore is discoverable.

CONCLUSION:

For the reasons advanced above, the plaintiff prays that the court order the defendant to furnish further answers, within fourteen (14) days of the Order of the court herein. The plaintiff also prays that the court order an award of reasonable interim attorney's fees in connection with the preparation and presentation of the instant motion.

5

Respectfully Submitted,

W.Kendall
136 Warren Street
Roxbury, Ma.02119
(617) 442-6130

## CERTIFICATE OF SERVICE

I, W.Kendall, counsel for plaintiff, hereby certify that on 13th.March, '06, I made in-hand service of the foregoing Memorandum; Motion To Strike and For Further Answers; Affidavit and Exhibits, at the City of Boston Law Department-Attention: T.Fukuda, esq., Room 615, City Hall, Boston, Ma.02201.

W.Kendall

# WINSTON KENDALL
ATTORNEY AT LAW

WINSTON D. KENDALL

136 WARREN STREET
ROXBURY, MASSACHUSETTS 02119
(617) 442-6130

17th.February, '06

Tsuyoshi Fukuda, esq.
City of Boston Law Dept.
City Hall, Room 615
Boston, Ma.02201

Re: # 05-10154-NG
   Diaz v. Higgins et al.

Dear Attorney Fukuda:

During our L.R.37.1(A) Conference of this morning, you asked that we provide you with some legal authority for the positions which we have taken relative to the plaintiff's entitlement to further answers to the first set of interrogatories.

Set forth, **seriatim,** is legal authority with regard to the dispute interrogatories as well as the manner in which plaintiff intends to use the information sought to prove his prima facie case and to oppose the affirmative defenses.

2. The defendant objected to provide detailed information with regard to the plaintiff's employment history, inter alia, on the ground that the interrogatory sought information already in plaintiff's possession.

As we pointed out in our discussions had by telephone this morning, the fact that the plaintiff **may be in possession** of such information does not relieve the defendant of its responsibility to provide same. The law in this area is to be found in **Chiasson v. Zayada Gulf Marine Corp.,** 988 F.2d 513, 518 (5th.Cir. 1993); Cohn v. Dart Indust. Inc., 21 Fed.R.Serv. 2nd 792-3 (D.Mass.1976) The information provided will be useful to the plaintiff in comparing his work experience to that of the white persons who were promoted over him and to show that his experience was at least comparable to, if not superior to, the successful applicants.

T.Fukuda, esq.
17th.February, '06
Page Two

3. Our response to defendant's Objection to this interrogatory is similar to that set forth with regard to #2, supra. In addition, the information relative to salary will be helpful in proving the plaintiff's case with regard to damages suffered as a result of denial of promotions.

4. You objected to this interrogatory on the ground that the City does not compel the employees to take training. We pointed out that the question sought to know training which was **offered to the plaintiff.** The answer will be helpful in comparing the training which the plaintiff received versus that receive by white employees, in order to determine whether there was discrimination in the provision of training.

5. The defendant's response to this interrogatory is inadequate because it fails to specify the criteria on which defendant relied for making selections for Foreman and Acting Foreman. The information sought is necessary to determine whether the process was void of criteria and was arbitrary; whether it was subjective and, if so, whether the subjective nature of the selection process produced a disparate impact on members of the protected class, such as the plaintiff. At paragraph 25 of the Verified Complaint, the plaintiff alleged that the subjective employment practices of the employer produced a disparate impact. In Watson v. Ft.Worth Bank & Trust Co., 487 U.S. 977 (1988), the Court upheld the applicability of disparate impact analysis to subjective employment decisions. Under 42 USC S.2000e-2(k)(1) the plaintiff is entitled to show that the decisional process with regard to promotions caused a disparate impact on members of the protected class. It is significant that liability may be imposed on the employer where there is proof of disparate impact, without any necessity for proving intentional discrimination on the part of the employer.

6. The Objection offered to this interrogatory is without legal basis, for the reasons advanced with regard to #5. The plaintiff needs the information to show that the subjective criteria on which the employer relied produced a disparate impact. The information with regard to qualifications possessed by the white persons who held these supervisory positions could be useful in showing disparate treatment and that it was used by the employer, intentionally, to favour white persons whose qualifications were not superior to those of the plaintiff. The answer fails to identify the race of the officials named, even though the plaintiff requested such information.

8 The information sought by this interrogatory- a breakdown of the workforce by name, race, etc. is necessary to plaintiff's showing that the subjective promotional practices led to a disparate impact and that the employer, based on its own statistics was aware of such impact.

Tsuyoshi Fukuda, esq.
17th.February, '06
Page Three

The employer is required by the terms of the regulations of Title VI and by
29 CFR Part 1607 to maintain statistics showing job validation tests
performed and is also required to file EEO 1 Reports. The failure of the
employer to comply with these requirements, which it promised the
federal government it would do, in receipt for federal funds, constitutes a
breach of contract which could lead to sanctions. See, First Alabama
Bank of Montgomery v. Donovan, 692 F.2d 714 (11th.Cir., 1982).
Further, the plaintiff is a third party beneficiary of the promises made by
the employer that it would adhere to fair employment practices and may
recover under a breach of contract theory. See, Campbell v. BHA, 443
Mass. 574, 581-582 (2005). We have indicated that we will narrow the
interrogatory to the period beginning in 1997.

9.  You indicated that you could not understand this interrogatory, even
    though we attempted to explicate it, in coherent language. The
    plaintiff is entitled to learn the defendant's position, especially with
    regard to its affirmative defenses. See, Mitchell v. Savini, 25 F.R.D.
    275,276 (D.Mass., 1960). The plaintiff wishes to know **whether** the
    defendants are claiming that the plaintiff unreasonably omitted/failed
    to make use of any internal mechanism, available to him in the
    workplace, to complain about racial harassment. If, indeed, that is the
    defendant's position, then the plaintiff wants to know all of the reasons
    in support of this position.
10. The defendant has objected to informing the plaintiff of any
    discussions which it had with the Union, relative to racial
    discrimination, on the ground that it was irrelevant, etc. The law is
    that intentional negative treatment of several employees in the same
    protected class, is evidence of discrimination. Trustees of Health &
    Hospitals of Boston, Inc. v. MCAD, 65 Mass.App.Ct. 329. ('05). If
    the response is that the Union did raise the issue of racial
    discrimination against black employees, in its discussions with the
    employer, then the plaintiff may present this information to show that
    the City was aware of complaints of discrimination and omitted to take
    reasonable steps to properly investigate them and to take corrective
    action.
11. The Objection to this interrogatory is without legal basis in light of the
    requirements of 29 CFR Part 1607 et seq. which mandates that the
    employer conduct job validation studies and maintain records showing
    the findings/results. Omission of the employer to conduct such studies

T.Fukuda, esq.
17th.February, '06
Page Four

constitutes a breach of contract which plaintiff may invoke under a third
party beneficiary theory. See the discussion re: # 5, supra.

12. The objection to this interrogatory which seeks the names, etc. of those
who complained of racial discrimination, etc. is not well founded. The
case law is that plaintiff may show that there was an atmosphere of
discrimination and that the employer mistreated, because of their race,
members of the protected class. This information is relevant to the
issue of intentional discrimination. See, Brennan v. GTE
Govt.Sys.Corp., 150 F.3d 21, 27-28 (1st.Cir., 1998); Conway v. Electro
Switch Corp., 825 F.2d 593 (1st., 1987); Rivers-Frisson v. S.E.
Missouri Com. Ctr., 133 F.3d 616, 620 (8th.Cir.). If there were other
persons who made similar complaints, the plaintiff is entitled to seek
to interview them and, may seek to have them testify at the trial of this
action. See, Koster v. TWA, Inc., 181 F.3d 24, 33-4 (it was not an
abuse of discretion for the court to allow the admission of anecdotal
evidence of discrimination against older employees, since "anecdotal
evidence" may "add colour" to an employer's decisionmaking
process).

13. The plaintiff relies on the discussion with regard to #12, supra, for the
proposition that he is entitled to show the jury that the defendant either
conducted no investigation into complaints of discrimination or
perfunctory investigations and took no effective action to remedy
discrimination, as it was/is required to do by the provisions of Title VI,
G.L.c.151B and its own Affirmative Action Program.

14. The defendant did not indicate the date on which William Kessler
assumed his position as Affirmative Action Officer and most glaringly,
did not state the duties of the position. If the information shows that
the AAO did not properly discharge his duties and that his supervisor
failed to notice his derelictions, that is evidence which the plaintiff
may present to show violations of the Affirmative Action Program and
subsequent harm to plaintiff.

15. The refusal of the defendant to supply the names, addresses of persons
who filed Claims at the MCAD against the defendant, deprives the
plaintiff of information which could show that the defendant was
aware of discrimination and did little or nothing to investigate such
claims and to prevent its reoccurrence. Plaintiff relies on the position
taken with regard to #'s 12 and 13, supra. In Clifton v. MBTA, 445
Mass. 611, ('05) the court indicated that in assessing the measure of
punitive damages, the trial court could consider ".. the degree of
reprehensibility of the of the defendant's conduct, citing, Labonte v.
Hutchins & Wheeler, 424 Mass. 813, 826-7 (1997). If the plaintiff

T.Fukuda, esq.
17th.February, '06
Page Five


could show that racial discrimination was pervasive in the workplace, by relying on a number of complainants and their anecdotal testimony as to their experience with racial discrimination, it would be admissible on his claim of hostile work environment, in violation of G.L.c.151B(4) and on punitive damages.

16-17. Plaintiff relies on the position taken with regard to #'s 12, 13.

21. The Objection to this interrogatory which seeks information relative to the defendant's measurement of productivity of the mechanics, deprives plaintiff of information which could show that the employer had no identifiable criteria for evaluating its employees. The response mentions that the employer tracks "billable hours" but does not indicate how much weight is attached to such hours in assessing the productivity of the mechanics; neither does the response address the period prior to 2001-02.

24. The response of the defendant does not indicate whether its position is that the plaintiff suffered **no damage.** If such is the defendant's position, the law requires that the defendant so state, without equivocation.

It is our hope that the defendant would re-consider the positions that it has taken, in light of the above and provide us with Further Answers, as soon as possible.

Thank you.


Sincerely,



W.Kendall



# CITY OF BOSTON
# LAW DEPARTMENT

City Hall, Room 615
Boston, MA 02201

THOMAS M. MENINO
*Mayor*

MERITA A. HOPKINS
*Corporation Counsel*

January 31, 2006

Winston Kendall, Esq.
136 Warren Street
Roxbury, Massachusetts 02119

      Re:    *Roderick Diaz v. David Higgins, et al.*
            Federal District Court Docket No. 05-10154-NG

Dear Attorney Kendall:

      Please find enclosed a copy of Defendants' Answers to Plaintiff's Interrogatories. The Defendants' Response to Plaintiff's Request for Productioon of Documents will be forthcoming.

Sincerely,

Tsuyoshi Fukuda
Assistant Corporation Counsel
(617) 635-4038

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10154-NG

RODERICK DIAZ,
    Plaintiff,

v.

DAVID HIGGINS, Individually, and, in
his capacity as Director of Central
Fleet Maintenance, City of Boston
Department of Public Works; and CITY
OF BOSTON,
    Defendants.

## DEFENDANTS' ANSWERS TO PLAINTIFF'S
## FIRST SET OF INTERROGATORIES

1.    State the name, address, job title and duties of the
person who is supplying the answers to these
interrogatories on behalf of the defendant, City of
Boston.

### ANSWER TO INT. #1

**Name:**        David Higgins
**Address:**    400 Frontage Road, Boston, MA 02118
**Job Title:**  Director of Central Fleet Maintenance
**Duties:**     I oversee the maintenance of and repair for
city fleet vehicles, including all the
associated tasks from budget preparation to
aiding other departments in preparing
specifications for vehicles to be purchased
to disposal of vehicles.

2.    Set forth in detail, the employment history of the
plaintiff with the City of Boston, including but not
limited to: the date of first employment; every
discrete position which he occupied and/or job
title; the name of every person who supervised him
and the dates of such supervisor.

1

## ANSWER TO INT. #2

<u>Objection</u>.  The Defendants object to Interrogatory #2 as
it is overly broad and unduly burdensome.  The Defendants
further object to this interrogatory because the question
seeks information that is already in the plaintiff's
knowledge, possession, custody and/or control.

3.   With respect to your answer to #3, supra; set forth
     in detail the duties of every position which
     plaintiff held and the compensation associated with
     every position.

## ANSWER TO INT. #3

<u>Objection</u>.  The Defendants object to Interrogatory #3
because the question seeks information that is already in
the plaintiff's knowledge, possession, custody and/or
control.

4.   Describe every discrete episode of training which
     the defendant afforded to plaintiff; including but
     not limited to: the effective dates; the nature of
     the training; the place (including street address)
     where the training was provided; the identities of
     the persons who provided the training.

## ANSWER TO INT. #4

<u>Objection</u>.  The Defendants object to Interrogatory #4 as
it is overly broad, unduly burdensome, vague, ambiguous
and not likely to lead to the discovery of admissible
evidence.  The Defendants further object to this
interrogatory because the question seeks information that
is already in the plaintiff's knowledge, possession,
custody and/or control.  Notwithstanding said objection,
Central Fleet Maintenance employees are not required to
attend any training offered through the DPW unless it is
training that concerns regulatory overview (i.e. motor
vehicle inspection).  Vendor representatives will also
conduct training at 400 Frontage Road when new products
or technology are introduced.

2

5.    Describe the process whereby individuals have been
      selected for the positions of Foreman and Acting
      Foreman at the Department of Public Works
      (hereinafter referred to as "DPW"), for every one of
      the years, 1993 through 2002, inclusive, the name,
      job title and race of every person who participated
      in such selection process and all of the criteria on
      which they relied for making selections.

## ANSWER TO INT. #5

Objection.  The Defendants object to Interrogatory #5 as
it is overly broad and unduly burdensome. Notwithstanding
said objection, since August 1997, when David Higgins
began his employment at the City of Boston, there has
been no formal process for filling temporary acting
foreman positions unless there is a known long-term
absence (i.e. long-term sick leave, military service,
etc.)  Between August 1997 and present, there have been
no long-term absences that would have required a
temporary acting foreman to be assigned.

Since 1997, the process for filling a Foreman position is
as follows: A posting with an opening and closing date is
granted by the personnel department. Applications are
submitted up to the closing date and are forwarded to
Kathleen Kelley at the DPW Personnel Department.  Kelley
then forwards the applications to David Higgins who
schedules interviews for all candidates that meet the
minimum requirements for the position.  Approximately 1
hour is allotted for each interview, a set of interview
questions are either handed to each candidate or read
aloud to the candidate.  The same questions are asked of
every candidate and include questions regarding objective
and subjective managerial/supervisory issues, industry
standards and out-of service requirements.  In 1999,
Higgins and Jerry Coughlin attended the interviews and in
2001, Higgins, Kelley, Maurice Smith and Bob Silvey
attended the interviews.  Once the questions are asked
and answered, the interviewers rate the candidates,
discuss the candidates' qualifications and answers, and
rate them for a second time keeping the group discussion
in mind, and come to a decision as to who is the most
qualified candidate for the position.  Once that decision
is made, Higgins will make a recommendation to the
Commissioner, who ultimately makes the hiring decision.

3

6.  With regard to you answer to #5, supra, for every
    one of the years 1993 through 2002, state the name,
    address and race of every person who held the
    position(s) of: Foreman; Acting Foreman at the DPW,
    and the qualifications on which the defendant relied
    in awarding the position(s); the starting salary and
    maximum salary for every such position.

ANSWER TO INT. #6

Objection.  The Defendants object to Interrogatory #6 as
it is overly broad, unduly burdensome, vague, ambiguous
and not likely to lead to the discovery of admissible
evidence.  Notwithstanding said objection, the following
people have been either Foreman or General Foreman at
Central Fleet Maintenance since its inception in 1997:

Maurice Gracia (General Foreman, Light Shop)
Fitzroy Prescott (Foreman, Light Shop)
James Monaghan (Foreman, Light Shop)
Paul Musto (General Foreman, Heavy Shop)
Ted Myers (Foreman, Heavy Shop) - Leave
Scott Alther (Foreman, Heavy Shop)
Bill Keene (Foreman, Heavy Shop) - Currently Retired
Al Young (General Foreman, Heavy Shop) - Currently
Retired
Horace Rider (General Foreman, Heavy Shop) - Currently
Principal Administrative Assistant of the Motor Vehicle
Management bureau.


7.  Describe in as much detail as possible, any internal
    mechanism which existed at the DPW, for any one of
    the years 1993 through 2002, through which employees
    could complain of discrimination, harassment,
    retaliation, etc. and indicate whether defendant
    made available any pre-printed forms on which
    employees could make such complaints.

ANSWER TO INT. #7

Since 8/97, Higgins has informed every employee that he
has an open door policy for discussing any employment
issues, including claims of racial discrimination.  This
policy has been conveyed to all Central Fleet Maintenance
employees via general meetings.  He has also informed all

4

Central Fleet Maintenance employees that complaints can
be made to directly to supervisors or to Personnel.   To
my knowledge, there are no preprinted forms.


8.    For every one of the years 1993-2002, provide a
      breakdown of the workforce at the DPW, including the
      name, race, job title, salary of its employees.

ANSWER TO INT. #8

Objection.   The Defendants object to Interrogatory #8 as
it is overly broad, unduly burdensome, irrelevant and
unlikely to lead to the discovery of admissible evidence.


9.    Set forth in as much detail as possible, all facts
      which indicate that plaintiff unreasonably failed to
      take advantage of any internal mechanism to complain
      of racial harassment and racial discrimination.

ANSWER TO INT. #9

Objection.   The Defendants object to Interrogatory #9
because the question is vague and ambiguous. The
Defendants further object to this interrogatory because
the question seeks information that is already in the
plaintiff's knowledge, possession, custody and/or
control.


10.   Describe any and all discussions which defendant has
      had with the Union (which represented and/or
      represents mechanics at the DPW) in any one of the
      years 1997 through 2002, with regard to issues or
      racial discrimination and racial harassment at the
      DPW, giving the name, job title, race and address of
      every person who participated in such discussions;
      the place (street address) where such discussions
      were held and the substance of such discussions.

ANSWER TO INT. #10

Objection.   The Defendants object to Interrogatory #10 as
it is overly broad, unduly burdensome, irrelevant and
unlikely to lead to the discovery of admissible evidence.

11.   Describe all efforts made by the defendant, for
      every one of the years 1993-2002, to determine
      whether its selection procedures for the position of
      Foreman and/or Assistant Foreman at the DPW, had
      produced or were producing a disparate impact on
      African American or Black employees.

**ANSWER TO INT. #11**

**Objection.**   The Defendants object to Interrogatory #11 as
it is overly broad, unduly burdensome, vague, ambiguous,
irrelevant and not likely to lead to the discovery of
admissible evidence.

12.   For every one of the years 1993-2002, give the name,
      race, job title of every person who complained of:
      racial discrimination; racial harassment and/or
      retaliation.

**ANSWER TO INT. #12**

**Objection.**   The Defendants object to Interrogatory #12 as
it is overly broad, unduly burdensome, irrelevant and not
likely to lead to the discovery of admissible evidence.

13.   With respect to your answer to #12, for every
      complaint, describe any investigation conducted,
      giving the name, address and job title of the
      persons involved in conducting the investigation and
      the results/findings.

**ANSWER TO INT. #13**

**Objection.**   The Defendants object to Interrogatory #13 as
it is overly broad, unduly burdensome, irrelevant and not
likely to lead to the discovery of admissible evidence.

14.   Give the name of the person(s) who served as
      Affirmative Action Officer of the defendant for
      every one of the years 1993-2002; state the address
      of her/his office; describe the duties of the
      position and the name and job title of his/her
      supervisor.

6

**ANSWER TO INT. #14**

Objection. The Defendants object to Interrogatory #14 as it is irrelevant and not likely to lead to the discovery of admissible evidence. Notwithstanding said objection, I believe the current Affirmative Action Officer at the City of Boston is William Kessler, I do not know his specific job duties, or the name of his supervisor.

15.   Give the name, address of every person who filed a Claim/Charge at the MCAD against the defendant and include the Docket Number of every Claim/Charge,; name and address of the attorney for the Complainant and the nature of the disposition of every such Charge.

**ANSWER TO INT. #15**

Objection. The Defendants object to Interrogatory #15 as it is overly broad, unduly burdensome, irrelevant and not likely to lead to the discovery of admissible evidence.

16.   State the name of every person who, in any one of the years 1993-2002, commenced action against the defendant, in either state or federal court, in which it was alleged that the defendant committed acts of discrimination and/or violated any of the provisions of: G.L. c. 151B; Title VII; 42 U.S.C. S. 1981.

**ANSWER TO INT. #16**

Objection. The Defendants object to Interrogatory #16 as it is overly broad, unduly burdensome, irrelevant and not likely to lead to the discovery of admissible evidence.

17.   With respect to your answer to #16, state the name and address of the attorney for every such plaintiff and the nature of the disposition of every action and date thereof.

7

ANSWER TO INT. #17

Objection.   The Defendants object to Interrogatory #17 as
it is overly broad, unduly burdensome, irrelevant and not
likely to lead to the discovery of admissible evidence.

18.   Give the name, address, job title and area of
      expertise of every expert witness on whom the
      defendant expects to rely at the trial of this
      action; the substance of the expert opinions and the
      facts on which such opinions are based.

ANSWER TO INT. #18

The Defendants state that it has not yet made a decision
as to whether any experts will be used as witnesses at
trial.   The Defendants recognize its obligation to
supplement its response if the decision is made to use
such witnesses.

19.   Give the name, address, job title and race of every
      person interviewed by defendant or in its behalf
      with regard to the allegations of the instant
      complaint.

Answer to Int. #19

Objection.   The Defendants object to Interrogatory #19
because the question is vague and ambiguous.
Notwithstanding said objection, if the plaintiff is
requesting information regarding the other interviewed
candidates for the positions that the plaintiff was
denied, please see below:

*Nov. 2, 1999 Posting:*

James Monaghan* (HMER), 400 Frontage Road, Boston, MA
Michael Connolly (HMER), 400 Frontage Road, Boston, MA
Scott Alther (HMER), 400 Frontage Road, Boston, MA
William Coughlin (HMER), 400 Frontage Road, Boston, MA
Tim O'Leary (HMER), 400 Frontage Road, Boston, MA
John Barrett (HMER), 400 Frontage Road, Boston, MA
Luigi Mastrangelo (HMER), 400 Frontage Road, Boston, MA
Robert Gilletti (HMER), 400 Frontage Road, Boston, MA

*July 19, 2001 Posting:*

**Paul Musto\* (HMER), 400 Frontage Road, Boston, MA**
**Luigi Mastrangelo (HMER), 400 Frontage Road, Boston, MA**
**Scott Alther (HMER), 400 Frontage Road, Boston, MA**

**\* James Monaghan and Paul Musto were the selected**
**candidates for the Foreman position.**

20.   Give the name, race, job title and address of every
      person whom the defendant expects to call at trial.

**ANSWER TO INT. #20**

**David Higgins**
**Director of Central Fleet Maintenance**
**400 Frontage Road, Boston, MA**

**Kathleen Kelley**
**Principal Personnel Officer, Department of Public Works**
**City Hall, 7th Floor, Boston, MA**

**Maurice Smith**
**Superintendent of the Light Shop**
**400 Frontage Road, Boston, MA**

**Robert Silvey**
**Superintendent of the Heavy Shop**
**400 Frontage Road, Boston, MA**

**The Defendants have not yet made a decision on all the**
**witnesses they intend to call at trial of this matter.**
**The Defendants recognize its obligation to supplement**
**this response when such decisions are made.**

21.   Describe in as much detail as possible, the manner
      by which (or in which) the defendant measured the
      productivity of the mechanics who worked at the DPW,
      for every one of the years 1993-2002; giving the
      name, race and job title of every person who
      participated in the measuring such productivity.

9

ANSWER TO INT. #21

Objection.  The Defendants object to Interrogatory #21 as
it is overly broad, unduly burdensome, vague, ambiguous,
irrelevant and not likely to lead to the discovery of
admissible evidence.  Notwithstanding said objection,
since 2001-2002 Central Fleet maintenance employees'
productivity is measured by a Vehicle Maintenance
Information System ("Fleet Anywhere" software) which
tracks the employees' billable hours as Central Fleet
Maintenance is a Time and Maintenance Shop.

22.   Describe in as much detail as possible, all
      documents on which you relied in responding to these
      interrogatories and give the name, race, job title
      and address of every person with whom you consulted
      in the preparation of these answers and the dates of
      such consultation.

ANSWER TO INT. #22

Objection.  The Defendants object to Interrogatory No. 22
as it is overly broad, unduly burdensome, vague,
ambiguous, irrelevant and not likely to lead to the
discovery of admissible evidence.  Notwithstanding said
objection, the Defendants states that David Higgins did
not refer to any documents or consult with any people in
preparation of this document.

23.   Describe the salary history of the person who was
      awarded the position of MERF for which plaintiff
      applied (and was denied) from the date on which he
      was awarded the position to the present and set
      forth all the fringe benefits of that position.

ANSWER TO INT. #23

Objection.  The Defendants object to Interrogatory No. 23
as the language "fringe benefits" is vague and ambiguous.
Furthermore, David Higgins did not know off-hand the
following information.  The following information was
provided by Kathy Kelley.  Notwithstanding said objection
please see below:

10

*Nov. 2, 1999 (James Monaghan):*

See Exhibit A

*July 19, 2001 (Paul Musto):*

See Exhibit B

24.  Describe all damages suffered by the plaintiff as a
     result of the denial of his application for the
     position of MERF.

**ANSWER TO INT. #24**

**Objection.  The Defendants object to Interrogatory #24
because the question seeks information that is already in
the plaintiff's knowledge, possession, custody and/or
control.**

11

# EXHIBIT A

### James J. Monaghan's Salary History

**Heavy Motor Equipment Repairman**

|          |          |
|----------|----------|
| $679.60  | 1/1/99   |
| $699.60  | 7/1/99   |
| $727.26  | 12/4/99  |

**Motor Equipment Repair Foreman**

|               |                       |
|---------------|-----------------------|
| $748.78       | 1/17/00               |
| $809.09       | 7/1/00                |
| $841.04       | 11/4/00               |
| $865.97       | 10/6/01               |
| $900.20       | 11/3/01               |
| $900.20+10.00 | 1/5/02  CDL Diff. Added |
| $935.83+10.00 | 11/2/02*              |
| $954.35+10.00 | 5/25/03               |
| $973.24+10.00 | 7/5/03                |
| $1,011.31+10.00 | 11/1/03             |
| $1,036.35+10.00 | 10/2/04             |
| $1,077.86+10.00 | 11/6/04             |
| $1,104.56+10.00 | 10/1/05             |
| $1,148.78+10.00 | 11/5/05             |

\*Temp. Out of Grade Prom. to General Maintenance Mechanic Frmn. effective 11/22/02 – 5/24/03.  Returned to MER Frmn. 5/25/03.

|                 |                  |
|-----------------|------------------|
| $1,011.37+10.00 | 11/22/02-5/24/03 |

# EXHIBIT B

## Paul Musto's Salary History

**Heavy Motor Equipment Repairman**
$747.78+10.00      7/1/00

**Temp. Out of Grade Prom. to Motor Equipment Repair Foreman**
$841.04+10.00      11/4/00
$865.97+10.00      10/6/01
$900.20+10.00      11/3/01

**Provisionally Promoted to Motor Eq. Repair Foreman**
$900.20+10.00      12/29/01
$900.20+20.00      1/5/02  Class A CDL
$918.00+20.00      7/6/02
$954.35+20.00      11/2/02
$973.24+20.00      7/5/03
$1,011.31+20.00    11/1/03

**Temp. Out of Grade Prom. to General Maint. Mechanic Foreman**
$1,093.50+20.00    1/17/04

**Provisionally Promoted to General Maint. Mechanic Foreman**
$1,093.50+20.00    3/20/04
$1,120.58+20.00    10/2/04
$1,165.01+20.00    1/1/05
$1,193.88+20.00    10/1/05
$1,241.24+20.00    1/7/06

*SIGNED UNDER THE PAINS AND PENALTIES OF*
*PERJURY THIS 23ʳᵈ DAY OF JANUARY,*
*2006.*

DAVID HIGGINS
Director, Central Fleet Maintenance


Objections by:


DEFENDANT, CITY OF BOSTON
Merita A. Hopkins
Corporation Counsel

By its attorney:

Tsuyoshi Fukuda BBO# 648739
Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4038
tsuyoshi.fukuda@cityofboston.gov


## CERTIFICATE OF SERVICE

    I, Tsuyoshi Fukuda, hereby certify that on this date I
served a copy of the foregoing document by first class
mail, postage prepaid to:

Winston Kendall, Esq.
136 Warren Street
Roxbury, Massachusetts 02119


1/31/06
Date

Tsuyoshi Fukuda

10