UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
C.A. # 05-10154-NG

RODERICK DIAZ

v.

DAVID HIGGINS ET AL

AFFIDAVIT IN SUPPORT OF
MOTION TO COMPEL AND
FOR FURTHER ANSWERS and
CERTIFICATE OF COMPLIANCE
WITH L.R. 37.1(A)

I, W.Kendall, depose and say that:

1. I am counsel for plaintiff.
2. Consistent with the provisions of L.R.37.1(A) counsel for the defendant and I conferred, for approximately thirty minutes on 17th.February, '06, relative to discovery disagreements on defendant's Answers to plaintiff's Interrogatories. Said Answers and cover letter of defense counsel are annexed and incorporated as Exhibit 1.
3. On the same date, I sent a five page letter, (Exhibit 2, annexed and incorporated herein) to defense counsel, in which I explained the legal authority for the requests for further answers as well as the manner in which plaintiff intended to use the information.
4. I have not received any further answers.
5. The defendant has likewise omitted to provide with its answers to plaintiff's request for production.
6. The information sought would greatly assist the plaintiff in his preparation for trial and would tend to narrow the issues for trial.
7. Plaintiff relies on the facts of the Verified Complaint on file in this action and on the Exhibits to which reference is made.

W.Kendall

13th.March, '06



# CITY OF BOSTON
## LAW DEPARTMENT
City Hall, Room 615
Boston, MA 02201

FILED
IN CLERKS OFFICE

2006 MAR 13  P 12: 31

THOMAS M. MENINO
*Mayor*

MERITA A. HOPKINS
JUR  *Corporation Counsel*
\SS.

January 31, 2006

Winston Kendall, Esq.
136 Warren Street
Roxbury, Massachusetts 02119

Re:  *Roderick Diaz v. David Higgins, et al.*
Federal District Court Docket No. 05-10154-NG

Dear Attorney Kendall:

Please find enclosed a copy of Defendants' Answers to Plaintiff's Interrogatories. The Defendants' Response to Plaintiff's Request for Productioon of Documents will be forthcoming.

Sincerely,

Tsuyoshi Fukuda
Assistant Corporation Counsel
(617) 635-4038

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10154-NG

RODERICK DIAZ,
        Plaintiff,

v.

DAVID HIGGINS, Individually, and, in
his capacity as Director of Central
Fleet Maintenance, City of Boston
Department of Public Works; and CITY
OF BOSTON,
        Defendants.

## DEFENDANTS' ANSWERS TO PLAINTIFF'S
## FIRST SET OF INTERROGATORIES

1.    State the name, address, job title and duties of the
      person who is supplying the answers to these
      interrogatories on behalf of the defendant, City of
      Boston.

**ANSWER TO INT. #1**

**Name:**        David Higgins
**Address:**     400 Frontage Road, Boston, MA 02118
**Job Title:**   Director of Central Fleet Maintenance
**Duties:**      I oversee the maintenance of and repair for
                 city fleet vehicles, including all the
                 associated tasks from budget preparation to
                 aiding other departments in preparing
                 specifications for vehicles to be purchased
                 to disposal of vehicles.

2.    Set forth in detail, the employment history of the
      plaintiff with the City of Boston, including but not
      limited to: the date of first employment; every
      discrete position which he occupied and/or job
      title; the name of every person who supervised him
      and the dates of such supervisor.

1

## ANSWER TO INT. #2

<u>Objection</u>.  The Defendants object to Interrogatory #2 as
it is overly broad and unduly burdensome.  The Defendants
further object to this interrogatory because the question
seeks information that is already in the plaintiff's
knowledge, possession, custody and/or control.

3.  With respect to your answer to #3, supra; set forth
    in detail the duties of every position which
    plaintiff held and the compensation associated with
    every position.

## ANSWER TO INT. #3

<u>Objection</u>.  The Defendants object to Interrogatory #3
because the question seeks information that is already in
the plaintiff's knowledge, possession, custody and/or
control.

4.  Describe every discrete episode of training which
    the defendant afforded to plaintiff; including but
    not limited to: the effective dates; the nature of
    the training; the place (including street address)
    where the training was provided; the identities of
    the persons who provided the training.

## ANSWER TO INT. #4

<u>Objection</u>.  The Defendants object to Interrogatory #4 as
it is overly broad, unduly burdensome, vague, ambiguous
and not likely to lead to the discovery of admissible
evidence.  The Defendants further object to this
interrogatory because the question seeks information that
is already in the plaintiff's knowledge, possession,
custody and/or control.  Notwithstanding said objection,
Central Fleet Maintenance employees are not required to
attend any training offered through the DPW unless it is
training that concerns regulatory overview (i.e. motor
vehicle inspection).  Vendor representatives will also
conduct training at 400 Frontage Road when new products
or technology are introduced.

2

5.    Describe the process whereby individuals have been
      selected for the positions of Foreman and Acting
      Foreman at the Department of Public Works
      (hereinafter referred to as "DPW"), for every one of
      the years, 1993 through 2002, inclusive, the name,
      job title and race of every person who participated
      in such selection process and all of the criteria on
      which they relied for making selections.

## ANSWER TO INT. #5

Objection.  The Defendants object to Interrogatory #5 as
it is overly broad and unduly burdensome. Notwithstanding
said objection, since August 1997, when David Higgins
began his employment at the City of Boston, there has
been no formal process for filling temporary acting
foreman positions unless there is a known long-term
absence (i.e. long-term sick leave, military service,
etc.)  Between August 1997 and present, there have been
no long-term absences that would have required a
temporary acting foreman to be assigned.

Since 1997, the process for filling a Foreman position is
as follows: A posting with an opening and closing date is
granted by the personnel department. Applications are
submitted up to the closing date and are forwarded to
Kathleen Kelley at the DPW Personnel Department.  Kelley
then forwards the applications to David Higgins who
schedules interviews for all candidates that meet the
minimum requirements for the position.  Approximately 1
hour is allotted for each interview, a set of interview
questions are either handed to each candidate or read
aloud to the candidate.  The same questions are asked of
every candidate and include questions regarding objective
and subjective managerial/supervisory issues, industry
standards and out-of service requirements.  In 1999,
Higgins and Jerry Coughlin attended the interviews and in
2001, Higgins, Kelley, Maurice Smith and Bob Silvey
attended the interviews.  Once the questions are asked
and answered, the interviewers rate the candidates,
discuss the candidates' qualifications and answers, and
rate them for a second time keeping the group discussion
in mind, and come to a decision as to who is the most
qualified candidate for the position.  Once that decision
is made, Higgins will make a recommendation to the
Commissioner, who ultimately makes the hiring decision.

6.    With regard to you answer to #5, supra, for every
      one of the years 1993 through 2002, state the name,
      address and race of every person who held the
      position(s) of: Foreman; Acting Foreman at the DPW,
      and the qualifications on which the defendant relied
      in awarding the position(s); the starting salary and
      maximum salary for every such position.

## ANSWER TO INT. #6

Objection.  The Defendants object to Interrogatory #6 as
it is overly broad, unduly burdensome, vague, ambiguous
and not likely to lead to the discovery of admissible
evidence.  Notwithstanding said objection, the following
people have been either Foreman or General Foreman at
Central Fleet Maintenance since its inception in 1997:

Maurice Gracia (General Foreman, Light Shop)
Fitzroy Prescott (Foreman, Light Shop)
James Monaghan (Foreman, Light Shop)
Paul Musto (General Foreman, Heavy Shop)
Ted Myers (Foreman, Heavy Shop) - Leave
Scott Alther (Foreman, Heavy Shop)
Bill Keene (Foreman, Heavy Shop) - Currently Retired
Al Young (General Foreman, Heavy Shop) - Currently
Retired
Horace Rider (General Foreman, Heavy Shop) - Currently
Principal Administrative Assistant of the Motor Vehicle
Management bureau.


7.    Describe in as much detail as possible, any internal
      mechanism which existed at the DPW, for any one of
      the years 1993 through 2002, through which employees
      could complain of discrimination, harassment,
      retaliation, etc. and indicate whether defendant
      made available any pre-printed forms on which
      employees could make such complaints.

## ANSWER TO INT. #7

Since 8/97, Higgins has informed every employee that he
has an open door policy for discussing any employment
issues, including claims of racial discrimination.  This
policy has been conveyed to all Central Fleet Maintenance
employees via general meetings.  He has also informed all

4

Central Fleet Maintenance employees that complaints can be made to directly to supervisors or to Personnel. To my knowledge, there are no preprinted forms.

8.  For every one of the years 1993-2002, provide a breakdown of the workforce at the DPW, including the name, race, job title, salary of its employees.

**ANSWER TO INT. #8**

<u>Objection</u>.  The Defendants object to Interrogatory #8 as it is overly broad, unduly burdensome, irrelevant and unlikely to lead to the discovery of admissible evidence.

9.  Set forth in as much detail as possible, all facts which indicate that plaintiff unreasonably failed to take advantage of any internal mechanism to complain of racial harassment and racial discrimination.

**ANSWER TO INT. #9**

<u>Objection</u>.  The Defendants object to Interrogatory #9 because the question is vague and ambiguous. The Defendants further object to this interrogatory because the question seeks information that is already in the plaintiff's knowledge, possession, custody and/or control.

10.  Describe any and all discussions which defendant has had with the Union (which represented and/or represents mechanics at the DPW) in any one of the years 1997 through 2002, with regard to issues or racial discrimination and racial harassment at the DPW, giving the name, job title, race and address of every person who participated in such discussions; the place (street address) where such discussions were held and the substance of such discussions.

**ANSWER TO INT. #10**

<u>Objection</u>.  The Defendants object to Interrogatory #10 as it is overly broad, unduly burdensome, irrelevant and unlikely to lead to the discovery of admissible evidence.

11.  Describe all efforts made by the defendant, for
     every one of the years 1993-2002, to determine
     whether its selection procedures for the position of
     Foreman and/or Assistant Foreman at the DPW, had
     produced or were producing a disparate impact on
     African American or Black employees.

## ANSWER TO INT. #11

**Objection.  The Defendants object to Interrogatory #11 as
it is overly broad, unduly burdensome, vague, ambiguous,
irrelevant and not likely to lead to the discovery of
admissible evidence.**

12.  For every one of the years 1993-2002, give the name,
     race, job title of every person who complained of:
     racial discrimination; racial harassment and/or
     retaliation.

## ANSWER TO INT. #12

**Objection.  The Defendants object to Interrogatory #12 as
it is overly broad, unduly burdensome, irrelevant and not
likely to lead to the discovery of admissible evidence.**

13.  With respect to your answer to #12, for every
     complaint, describe any investigation conducted,
     giving the name, address and job title of the
     persons involved in conducting the investigation and
     the results/findings.

## ANSWER TO INT. #13

**Objection.  The Defendants object to Interrogatory #13 as
it is overly broad, unduly burdensome, irrelevant and not
likely to lead to the discovery of admissible evidence.**

14.  Give the name of the person(s) who served as
     Affirmative Action Officer of the defendant for
     every one of the years 1993-2002; state the address
     of her/his office; describe the duties of the
     position and the name and job title of his/her
     supervisor.

6

## ANSWER TO INT. #14

**Objection.** The Defendants object to Interrogatory #14 as
it is irrelevant and not likely to lead to the discovery
of admissible evidence. Notwithstanding said objection,
I believe the current Affirmative Action Officer at the
City of Boston is William Kessler, I do not know his
specific job duties, or the name of his supervisor.

15. Give the name, address of every person who filed a
    Claim/Charge at the MCAD against the defendant and
    include the Docket Number of every Claim/Charge,;
    name and address of the attorney for the Complainant
    and the nature of the disposition of every such
    Charge.

## ANSWER TO INT. #15

**Objection.** The Defendants object to Interrogatory #15 as
it is overly broad, unduly burdensome, irrelevant and not
likely to lead to the discovery of admissible evidence.

16. State the name of every person who, in any one of
    the years 1993-2002, commenced action against the
    defendant, in either state or federal court, in
    which it was alleged that the defendant committed
    acts of discrimination and/or violated any of the
    provisions of: G.L. c. 151B; Title VII; 42 U.S.C. S.
    1981.

## ANSWER TO INT. #16

**Objection.** The Defendants object to Interrogatory #16 as
it is overly broad, unduly burdensome, irrelevant and not
likely to lead to the discovery of admissible evidence.

17. With respect to your answer to #16, state the name
    and address of the attorney for every such plaintiff
    and the nature of the disposition of every action
    and date thereof.

ANSWER TO INT. #17

Objection.  The Defendants object to Interrogatory #17 as
it is overly broad, unduly burdensome, irrelevant and not
likely to lead to the discovery of admissible evidence.


18.  Give the name, address, job title and area of
     expertise of every expert witness on whom the
     defendant expects to rely at the trial of this
     action; the substance of the expert opinions and the
     facts on which such opinions are based.

ANSWER TO INT. #18

The Defendants state that it has not yet made a decision
as to whether any experts will be used as witnesses at
trial.  The Defendants recognize its obligation to
supplement its response if the decision is made to use
such witnesses.


19.  Give the name, address, job title and race of every
     person interviewed by defendant or in its behalf
     with regard to the allegations of the instant
     complaint.

Answer to Int. #19

Objection.  The Defendants object to Interrogatory #19
because the question is vague and ambiguous.
Notwithstanding said objection, if the plaintiff is
requesting information regarding the other interviewed
candidates for the positions that the plaintiff was
denied, please see below:

*Nov. 2, 1999 Posting:*

James Monaghan* (HMER), 400 Frontage Road, Boston, MA
Michael Connolly (HMER), 400 Frontage Road, Boston, MA
Scott Alther (HMER), 400 Frontage Road, Boston, MA
William Coughlin (HMER), 400 Frontage Road, Boston, MA
Tim O'Leary (HMER), 400 Frontage Road, Boston, MA
John Barrett (HMER), 400 Frontage Road, Boston, MA
Luigi Mastrangelo (HMER), 400 Frontage Road, Boston, MA
Robert Gilletti (HMER), 400 Frontage Road, Boston, MA

8

*July 19, 2001 Posting:*

Paul Musto* (HMER), 400 Frontage Road, Boston, MA
Luigi Mastrangelo (HMER), 400 Frontage Road, Boston, MA
Scott Alther (HMER), 400 Frontage Road, Boston, MA

* James Monaghan and Paul Musto were the selected
candidates for the Foreman position.


20.  Give the name, race, job title and address of every
     person whom the defendant expects to call at trial.

ANSWER TO INT. #20

David Higgins
Director of Central Fleet Maintenance
400 Frontage Road, Boston, MA

Kathleen Kelley
Principal Personnel Officer, Department of Public Works
City Hall, 7th Floor, Boston, MA

Maurice Smith
Superintendent of the Light Shop
400 Frontage Road, Boston, MA

Robert Silvey
Superintendent of the Heavy Shop
400 Frontage Road, Boston, MA

**The Defendants have not yet made a decision on all the
witnesses they intend to call at trial of this matter.
The Defendants recognize its obligation to supplement
this response when such decisions are made.**


21.  Describe in as much detail as possible, the manner
     by which (or in which) the defendant measured the
     productivity of the mechanics who worked at the DPW,
     for every one of the years 1993-2002; giving the
     name, race and job title of every person who
     participated in the measuring such productivity.

ANSWER TO INT. #21

Objection.  The Defendants object to Interrogatory #21 as
it is overly broad, unduly burdensome, vague, ambiguous,
irrelevant and not likely to lead to the discovery of
admissible evidence.  Notwithstanding said objection,
since 2001-2002 Central Fleet maintenance employees'
productivity is measured by a Vehicle Maintenance
Information System ("Fleet Anywhere" software) which
tracks the employees' billable hours as Central Fleet
Maintenance is a Time and Maintenance Shop.


22.  Describe in as much detail as possible, all
     documents on which you relied in responding to these
     interrogatories and give the name, race, job title
     and address of every person with whom you consulted
     in the preparation of these answers and the dates of
     such consultation.

ANSWER TO INT. #22

Objection.  The Defendants object to Interrogatory No. 22
as it is overly broad, unduly burdensome, vague,
ambiguous, irrelevant and not likely to lead to the
discovery of admissible evidence.  Notwithstanding said
objection, the Defendants states that David Higgins did
not refer to any documents or consult with any people in
preparation of this document.


23.  Describe the salary history of the person who was
     awarded the position of MERF for which plaintiff
     applied (and was denied) from the date on which he
     was awarded the position to the present and set
     forth all the fringe benefits of that position.

ANSWER TO INT. #23

Objection.  The Defendants object to Interrogatory No. 23
as the language "fringe benefits" is vague and ambiguous.
Furthermore, David Higgins did not know off-hand the
following information.  The following information was
provided by Kathy Kelley.  Notwithstanding said objection
please see below:

*Nov. 2, 1999 (James Monaghan):*

See Exhibit A

*July 19, 2001 (Paul Musto):*

See Exhibit B

24.    Describe all damages suffered by the plaintiff as a
       result of the denial of his application for the
       position of MERF.

ANSWER TO INT. #24

Objection.    The Defendants object to Interrogatory #24
because the question seeks information that is already in
the plaintiff's knowledge, possession, custody and/or
control.

# EXHIBIT A

## James J. Monaghan's Salary History

**Heavy Motor Equipment Repairman**

| | |
|---|---|
| $679.60 | 1/1/99 |
| $699.60 | 7/1/99 |
| $727.26 | 12/4/99 |

**Motor Equipment Repair Foreman**

| | |
|---|---|
| $748.78 | 1/17/00 |
| $809.09 | 7/1/00 |
| $841.04 | 11/4/00 |
| $865.97 | 10/6/01 |
| $900.20 | 11/3/01 |
| $900.20+10.00 | 1/5/02  CDL Diff. Added |
| $935.83+10.00 | 11/2/02* |
| $954.35+10.00 | 5/25/03 |
| $973.24+10.00 | 7/5/03 |
| $1,011.31+10.00 | 11/1/03 |
| $1,036.35+10.00 | 10/2/04 |
| $1,077.86+10.00 | 11/6/04 |
| $1,104.56+10.00 | 10/1/05 |
| $1,148.78+10.00 | 11/5/05 |

*Temp. Out of Grade Prom. to General Maintenance Mechanic Frmn.
effective 11/22/02 – 5/24/03.  Returned to MER Frmn. 5/25/03.

| | |
|---|---|
| $1,011.37+10.00 | 11/22/02-5/24/03 |

# EXHIBIT B

## Paul Musto's Salary History

**Heavy Motor Equipment Repairman**
$747.78+10.00      7/1/00

**Temp. Out of Grade Prom. to Motor Equipment Repair Foreman**
$841.04+10.00      11/4/00
$865.97+10.00      10/6/01
$900.20+10.00      11/3/01

**Provisionally Promoted to Motor Eq. Repair Foreman**
$900.20+10.00      12/29/01
$900.20+20.00      1/5/02  Class A CDL
$918.00+20.00      7/6/02
$954.35+20.00      11/2/02
$973.24+20.00      7/5/03
$1,011.31+20.00    11/1/03

**Temp. Out of Grade Prom. to General Maint. Mechanic Foreman**
$1,093.50+20.00    1/17/04

**Provisionally Promoted to General Maint. Mechanic Foreman**
$1,093.50+20.00    3/20/04
$1,120.58+20.00    10/2/04
$1,165.01+20.00    1/1/05
$1,193.88+20.00    10/1/05
$1,241.24+20.00    1/7/06

SIGNED UNDER THE PAINS AND PENALTIES OF
PERJURY THIS 23rd DAY OF JANUARY,
2006.

_____
DAVID HIGGINS
Director, Central Fleet Maintenance


                    Objections by:


                    DEFENDANT, CITY OF BOSTON
                    Merita A. Hopkins
                    Corporation Counsel

                    By its attorney:


                    _____
                    Tsuyoshi Fukuda BBO# 648739
                    Assistant Corporation Counsel
                    City of Boston Law Department
                    Room 615, City Hall
                    Boston, MA 02201
                    (617) 635-4038
                    tsuyoshi.fukuda@cityofboston.gov


                CERTIFICATE OF SERVICE

     I, Tsuyoshi Fukuda, hereby certify that on this date I
served a copy of the foregoing document by first class
mail, postage prepaid to:

Winston Kendall, Esq.
136 Warren Street
Roxbury, Massachusetts 02119


_____            _____
1/31/06                             Tsuyoshi Fukuda
Date

                          10

WINSTON KENDALL
ATTORNEY AT LAW

FILED
IN CLERKS OFFICE

2006 MAR 13 P 12: 31

136 WARREN STREET
DISTRICT MASSACHUSETTS 02119
OF MASS.

WINSTON D. KENDALL

17th.February, '06

Tsuyoshi Fukuda, esq.
City of Boston Law Dept.
City Hall, Room 615
Boston, Ma.02201

Re: # 05-10154-NG
      Diaz v. Higgins et al.

Dear Attorney Fukuda:

During our L.R.37.1(A) Conference of this morning, you asked
that we provide you with some legal authority for the positions which we
have taken relative to the plaintiff's entitlement to further answers to the
first set of interrogatories.

Set forth, **seriatim,** is legal authority with regard to the dispute
interrogatories as well as the manner in which plaintiff intends to use the
information sought to prove his prima facie case and to oppose the
affirmative defenses.

2. The defendant objected to provide detailed information with regard to
    the plaintiff's employment history, inter alia, on the ground that the
    interrogatory sought information already in plaintiff's possession.

As we pointed out in our discussions had by telephone this morning,
the fact that the plaintiff **may be in possession** of such information
does not relieve the defendant of its responsibility to provide same.
The law in this area is to be found in **Chiasson v. Zayada Gulf
Marine Corp.,** 988 F.2d 513, 518 (5th.Cir. 1993); Cohn v. Dart Indust.
Inc., 21 Fed.R.Serv. 2nd 792-3 (D.Mass.1976) The information
provided will be useful to the plaintiff in comparing his work
experience to that of the white persons who were promoted over him
and to show that his experience was at least comparable to, if not
superior to, the successful applicants.

T.Fukuda, esq.
17th.February, '06
Page Two

3. Our response to defendant's Objection to this interrogatory is similar to that set forth with regard to #2, supra. In addition, the information relative to salary will be helpful in proving the plaintiff's case with regard to damages suffered as a result of denial of promotions.

4. You objected to this interrogatory on the ground that the City does not compel the employees to take training. We pointed out that the question sought to know training which was **offered to the plaintiff.** The answer will be helpful in comparing the training which the plaintiff received versus that receive by white employees, in order to determine whether there was discrimination in the provision of training.

5. The defendant's response to this interrogatory is inadequate because it fails to specify the criteria on which defendant relied for making selections for Foreman and Acting Foreman. The information sought is necessary to determine whether the process was void of criteria and was arbitrary; whether it was subjective and, if so, whether the subjective nature of the selection process produced a disparate impact on members of the protected class, such as the plaintiff. At paragraph 25 of the Verified Complaint, the plaintiff alleged that the subjective employment practices of the employer produced a disparate impact. In Watson v. Ft.Worth Bank & Trust Co., 487 U.S. 977 (1988), the Court upheld the applicability of disparate impact analysis to subjective employment decisions. Under 42 USC S.2000e-2(k)(1) the plaintiff is entitled to show that the decisional process with regard to promotions caused a disparate impact on members of the protected class. It is significant that liability may be imposed on the employer where there is proof of disparate impact, without any necessity for proving intentional discrimination on the part of the employer.

6. The Objection offered to this interrogatory is without legal basis, for the reasons advanced with regard to #5. The plaintiff needs the information to show that the subjective criteria on which the employer relied produced a disparate impact. The information with regard to qualifications possessed by the white persons who held these supervisory positions could be useful in showing disparate treatment and that it was used by the employer, intentionally, to favour white persons whose qualifications were not superior to those of the plaintiff. The answer fails to identify the race of the officials named, even though the plaintiff requested such information.

8 The information sought by this interrogatory- a breakdown of the workforce by name, race, etc. is necessary to plaintiff's showing that the subjective promotional practices led to a disparate impact and that the employer, based on its own statistics was aware of such impact.

Tsuyoshi Fukuda, esq.
17th.February, '06
Page Three

The employer is required by the terms of the regulations of Title VI and by
29 CFR Part 1607 to maintain statistics showing job validation tests
performed and is also required to file EEO 1 Reports. The failure of the
employer to comply with these requirements, which it promised the
federal government it would do, in receipt for federal funds, constitutes a
breach of contract which could lead to sanctions. See, First Alabama
Bank of Montgomery v. Donovan, 692 F.2d 714 (11th.Cir., 1982).
Further, the plaintiff is a third party beneficiary of the promises made by
the employer that it would adhere to fair employment practices and may
recover under a breach of contract theory. See, Campbell v. BHA, 443
Mass. 574, 581-582 (2005).   We have indicated that we will narrow the
interrogatory to the period beginning in 1997.

9. You indicated that you could not understand this interrogatory, even
though we attempted to explicate it, in coherent language. The
plaintiff is entitled to learn the defendant's position, especially with
regard to its affirmative defenses. See, Mitchell v. Savini, 25 F.R.D.
275,276 (D.Mass., 1960). The plaintiff wishes to know **whether** the
defendants are claiming that the plaintiff unreasonably omitted/failed
to make use of any internal mechanism, available to him in the
workplace, to complain about racial harassment. If, indeed, that is the
defendant's position, then the plaintiff wants to know all of the reasons
in support of this position.

10. The defendant has objected to informing the plaintiff of any
discussions which it had with the Union, relative to racial
discrimination, on the ground that it was irrelevant, etc. The law is
that intentional negative treatment of several employees in the same
protected class, is evidence of discrimination. Trustees of Health &
Hospitals of Boston, Inc. v. MCAD, 65 Mass.App.Ct. 329. ('05). If
the response is that the Union did raise the issue of racial
discrimination against black employees, in its discussions with the
employer, then the plaintiff may present this information to show that
the City was aware of complaints of discrimination and omitted to take
reasonable steps to properly investigate them and to take corrective
action.

11. The Objection to this interrogatory is without legal basis in light of the
requirements of 29 CFR Part 1607 et seq. which mandates that the
employer conduct job validation studies and maintain records showing
the findings/results. Omission of the employer to conduct such studies

T.Fukuda, esq.
17th.February, '06
Page Four

constitutes a breach of contract which plaintiff may invoke under a third party beneficiary theory. See the discussion re: # 5, supra.

12. The objection to this interrogatory which seeks the names, etc. of those who complained of racial discrimination, etc. is not well founded. The case law is that plaintiff may show that there was an atmosphere of discrimination and that the employer mistreated, because of their race, members of the protected class. This information is relevant to the issue of intentional discrimination. See, Brennan v. GTE Govt.Sys.Corp., 150 F.3d 21, 27-28 (1st.Cir., 1998); Conway v. Electro Switch Corp., 825 F.2d 593 (1st., 1987); Rivers-Frisson v. S.E. Missouri Com. Ctr., 133 F.3d 616, 620 (8th.Cir.). If there were other persons who made similar complaints, the plaintiff is entitled to seek to interview them and, may seek to have them testify at the trial of this action. See, Koster v. TWA, Inc., 181 F.3d 24, 33-4 (it was not an abuse of discretion for the court to allow the admission of anecdotal evidence of discrimination against older employees, since "anecdotal evidence" may "add colour" to an employer's decisionmaking process).

13. The plaintiff relies on the discussion with regard to #12, supra, for the proposition that he is entitled to show the jury that the defendant either conducted no investigation into complaints of discrimination or perfunctory investigations and took no effective action to remedy discrimination, as it was/is required to do by the provisions of Title VI, G.L.c.151B and its own Affirmative Action Program.

14. The defendant did not indicate the date on which William Kessler assumed his position as Affirmative Action Officer and most glaringly, did not state the duties of the position. If the information shows that the AAO did not properly discharge his duties and that his supervisor failed to notice his derelictions, that is evidence which the plaintiff may present to show violations of the Affirmative Action Program and subsequent harm to plaintiff.

15. The refusal of the defendant to supply the names, addresses of persons who filed Claims at the MCAD against the defendant, deprives the plaintiff of information which could show that the defendant was aware of discrimination and did little or nothing to investigate such claims and to prevent its reoccurrence. Plaintiff relies on the position taken with regard to #'s 12 and 13, supra. In Clifton v. MBTA, 445 Mass. 611, ('05) the court indicated that in assessing the measure of punitive damages, the trial court could consider ".. the degree of reprehensibility of the of the defendant's conduct, citing, Labonte v. Hutchins & Wheeler, 424 Mass. 813, 826-7 (1997). If the plaintiff

T.Fukuda, esq.
17th.February, '06
Page Five


could show that racial discrimination was pervasive in the workplace, by relying on a number of complainants and their anecdotal testimony as to their experience with racial discrimination, it would be admissible on his claim of hostile work environment, in violation of G.L.c.151B(4) and on punitive damages.

16-17. Plaintiff relies on the position taken with regard to #'s 12, 13.

21. The Objection to this interrogatory which seeks information relative to the defendant's measurement of productivity of the mechanics, deprives plaintiff of information which could show that the employer had no identifiable criteria for evaluating its employees. The response mentions that the employer tracks "billable hours" but does not indicate how much weight is attached to such hours in assessing the productivity of the mechanics; neither does the response address the period prior to 2001-02.

24. The response of the defendant does not indicate whether its position is that the plaintiff suffered **no damage.** If such is the defendant's position, the law requires that the defendant so state, without equivocation.

    It is our hope that the defendant would re-consider the positions that it has taken, in light of the above and provide us with Further Answers, as soon as possible.

    Thank you.


                                            Sincerely,



                                            W.Kendall