UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10154-NG

RODERICK DIAZ,
    Plaintiff,

v.

DAVID HIGGINS, Individually, and, in
his capacity as Director of Central
Fleet Maintenance, City of Boston
Department of Public Works; and CITY
OF BOSTON,
    Defendants.

**DEFENDANTS, CITY OF BOSTON DEPARTMENT OF PUBLIC WORKS AND
DAVID HIGGINS'S, OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE
AND FOR FURTHER ANSWERS TO DISCOVERY**

**I.**     **INTRODUCTION**

The plaintiff brings a two-count complaint against the
defendants, David Higgins (hereinafter, "Defendant
Higgins"), and the City of Boston (hereinafter, "City").
The first count relates specifically to the Defendant
Higgins, individually, and alleges that he violated G.L. c.
151B(4), G.L.c. 151B(4)(4), 42 U.S.C. § 1981 and alleges
that he interfered with the plaintiff's contract of
employment with the City, by not promoting him to a foreman
position at Central Fleet Maintenance (hereinafter "CFM") in
the City of Boston Department of Public Works (hereinafter
"DPW") in 2001.  The second count of the Plaintiff's

complaint relates specifically to the Defendant City, and alleges that it violated G.L. c. 151B(4), G.L.c. 151B(4)(4), 42 U.S.C. § 1981 and Title VII, by not promoting the Plaintiff to a foreman position at Central Fleet Maintenance (hereinafter "CFM") in the City of Boston Department of Public Works (hereinafter "DPW") in 2001.

The instant dispute arises over nine of the Plaintiff's interrogatories to be answered by the Defendants.  On January 31, 2006, the Defendants sent the Plaintiff its Answers to Plaintiff's Interrogatories with objections. (Exhibit A)  Pursuant to Rule 7.1, on February 16, 2006, the parties communicated via telephone regarding seventeen of the Defendant's objections.  In a letter dated, February 17, 2006, the Plaintiff memorialized his arguments.  (Exhibit B) During the next few weeks, the Defendants attempted to gather the information necessary to supplement its response to Plaintiff's Interrogatories.  On March 13, 2006, the Plaintiff filed his Motion to Strike and For Further Answers with the Court, and on March 14, 2006, at a Status Review Conference before the Honorable Magistrate Judge Leo Sorokin, the Defendants informed the court that they would be sending the Plaintiff its Supplemental Response to Plaintiff's Interrogatories later that same afternoon. (Exhibit C)  Anticipating that the Plaintiff may still find the Defendant's response as unresponsive, the court

suggested that the Parties once again confer regarding the
Supplemental Answers and allowed the Defendant until March
31, 2006, to file its Opposition to Plaintiff's Motion to
Strike and For Further Answers to any Interrogatory Answers
still in dispute.  On March 23, 2006 the parties again
communicated via telephone and the Plaintiff informed the
Defendants that he was still seeking further answers on
Interrogatory Nos. 5, 6, 9, 10, 11, 13, 17, 21, and 24.  The
Defendants will discuss each in turn.

## II.  <u>ARGUMENT</u>

Under Fed. R. Civ. P. Rule 26, a party is entitled to
discovery on any issue which is *relevant* to the subject
matter involved in the pending litigation.  The rule further
allows for discovery of potentially inadmissible evidence
"*if the information sought appears reasonably calculated to
lead to the discovery of admissible evidence.*"  Fed. R. Civ.
P. Rule 26(b)(2)  [emphasis supplied].

The discovery dispute at issue here concerns requests
for information that are not relevant to the issues in the
instant litigation, and which are not reasonably calculated
to lead to the discovery of admissible evidence.  Although
the Rules permit broad discovery, the Courts have also
admonished parties that they "have a[n] obligation to tailor
[discovery requests] to suit the particular exigencies of
the litigation.  They ought not to be permitted to use

broadswords where scalpels will suffice, nor to undertake
wholly exploratory operations in the vague hope that
something helpful will turn up." *Mack v. Great Atlantic &
Pacific Tea Co., Inc.*, 871 F.2d 179, 187 (1st Cir. 1989).
Because the Plaintiff's requests are not tailored in any
meaningful way, the Defendants ask that this Honorable Court
deny his Motion to Strike and For Further Answers.

### A.    Interrogatory No. 5

   The Plaintiff argues that the Defendants' response is
"inadequate because it fails to specify the criteria on
which defendant relied for making selections for Foreman and
Acting Foreman."  The Plaintiff's use of the term "criteria"
is overbroad, vague and ambiguous, however, the Defendants
attempted to answer Interrogatory No. 5 with its best
understanding of the term.  In its answer, the Defendants
delineated, in detail, the selection process for Foreman and
also stated that since 1997, when David Higgins began his
employment with the City of Boston as Director of Central
Fleet Maintenance, to the present, there have been no long-
term absences that would have required a temporary acting
foreman to be assigned.  The response also indicates that
the same series of questions, including objective and
subjective managerial/supervisory questions, industry
standards questions and out-of-service requirement questions
were asked of all interviewed candidates.  Furthermore, the

Defendants produced the questions that were asked in the interview in its Response to Plaintiff's Request for Production of Documents.  Because the Defendants' answer to Interrogatory No. 5 is sufficient, no further response is necessary.

### B. Interrogatory No. 6

The Plaintiff argues that the Defendants' response is inadequate for the same reasons set forth in Interrogatory No. 5.  The Plaintiff's use of the terms "qualifications on which the defendant relied" is overbroad, vague and ambiguous.  Nevertheless, the Defendants listed the name and position of Central Fleet Maintenance ("CFM") Foreman and General Foreman since 1997, the year of CFM's inception.  Because the Defendants' answer to Interrogatory No. 6 is sufficient, no further response is necessary.

### C. Interrogatory No. 9

In this Interrogatory, the Plaintiff asks "for all facts which indicate that plaintiff unreasonably failed to take advantage of any internal mechanism to complain of racial harassment and racial discrimination."  The language the Plaintiff uses in Interrogatory No. 9 is overbroad, vague and ambiguous and it appears that the information sought is already in the Plaintiff's knowledge, possession and/or control.  Furthermore, in the Defendants' Answer to Interrogatory No. 7, the Defendants describe the mechanisms

available to report racial discrimination and harassment,
and in its Response to Plaintiff's Request for Production of
Documents the Defendants have provided the Plaintiff with
the City's anti-discrimination and anti-harassment policies.
Because the information the Plaintiff seeks in Interrogatory
No. 9 is unclear, the Defendants cannot respond in any
meaningful way and, thus, no further response is necessary.

### D. Interrogatory No. 10

In this interrogatory the Plaintiff is seeking "any and
all discussions which defendant has had with the Union . . .
in any one of the years 1997 through 2002, with regard to
issues o[f] racial discrimination and racial harassment at
the DPW. . . ."  Interrogatory No. 10 is overbroad, unduly
burdensome, irrelevant, vague, ambiguous and not likely to
lead to admissible evidence.  As indicated above, the
Plaintiff has "a[n] obligation to tailor [discovery
requests] to suit the particular exigencies of the
litigation.  They ought not to be permitted to use
broadswords where scalpels will suffice, nor to undertake
wholly exploratory operations in the vague hope that
something helpful will turn up." *Mack v. Great Atlantic &
Pacific Tea Co., Inc.*, 871 F.2d at 187.  This interrogatory
fails to meet these requirements and, thus, no further
response is necessary.

### E. Interrogatory 11

In this interrogatory, the Plaintiff is seeking a description of "all efforts made by the defendant, for every one of the years 1993-2002, to determine whether its selection procedures for the position of Foreman and/or Assistant Foreman at the DPW, had produced or were producing a disparate impact on African American or Black employees." Interrogatory No. 11 is overbroad, unduly burdensome, irrelevant, vague, ambiguous and not likely to lead to admissible evidence. Furthermore, the term "disparate impact" is a legal term that the undersigned respondents are not qualified to decipher. Nevertheless, the Defendants provided the Plaintiff with the City of Boston Affirmative Action Plan and Anti-Harassment and Anti-Discrimination Policy, that delineates its procedures. Thus, no further answer is necessary.

### F. Interrogatory No. 13

In this interrogatory the Plaintiff is seeking a description of every investigation of every discrimination complaint made between 1993-2002, presumably made against the Department of Public Works and/or David Higgins. Interrogatory No. 13 is overbroad, unduly burdensome, irrelevant, vague, ambiguous and not likely to lead to admissible evidence. First, the information sought is not tailored to any particular entity and is obviously overbroad

in that respect.  Further, in its answer to Interrogatory
No. 15, the Defendants provided the Plaintiff with a list of
complaints alleging race discrimination against the DPW
between 1997-2002.  Because the Defendants' answer to
Interrogatory No. 13 is sufficient, no further response is
necessary.

### G. Interrogatory No. 17

In this interrogatory, the Plaintiff requests
information regarding each attorney that represented a
plaintiff in a discrimination cause of action against the
DPW and/or David Higgins.  In its answer to Interrogatory
No. 15, the Defendants provided a list of discrimination
lawsuits against the DPW, including their docket numbers.
Because the Defendants' answer to Interrogatory No. 17 is
sufficient, no further response is necessary.

### H. Interrogatory No. 21

In this interrogatory the Plaintiff "seeks information
relative to the defendant's measurement of productivity of
the mechanics" at CFM.  The language the Plaintiff uses in
Interrogatory No. 21, specifically, "measured the
productivity" is vague and ambiguous and the Defendants are
not clear on what information the Plaintiff is seeking.
Nevertheless, the Defendants provided the Plaintiff with
information regarding the software that CFM uses to measure
the billable hours of its mechanics between 2001-2002.

Because the Defendants' answer to Interrogatory No. 21 is sufficient, no further response is necessary.

### I. Interrogatory No. 24

In this interrogatory, the Plaintiff is seeking a description from the Defendant of "all damages suffered by the plaintiff as a result of the denial of his application for the position of MERF." The Defendants cannot respond to Interrogatory No. 24 because it is not aware of what damages were allegedly suffered by the Plaintiff. It is the Plaintiff's burden to show that he, in fact, did suffer as a result of the alleged adverse employment action. Further, information regarding any damages that the Plaintiff allegedly suffered is already in the Plaintiff's knowledge, custody and control. Because the Defendant cannot respond to Interrogatory No. 24 in any meaningful way, no further response is necessary.

### J. The Plaintiff is Not Limited to Written Interrogatories as His Only Means for Discovery.

The Defendants submit that many of the Plaintiff's Interrogatories are written in ways that do not lend themselves to written responses. As the Plaintiff is aware, he is also entitled to conduct depositions, pursuant to the applicable rules, as a means to discovering relevant information.

III. <u>**CONCLUSION**</u>

For the reasons stated herein, the Plaintiff's Motion to Strike and For Further Answers should be denied.


Respectfully,

DEFENDANT, CITY OF BOSTON
William F. Sinnott
Corporation Counsel

By his attorney:


s/ Tsuyoshi Fukuda
_____
Tsuyoshi Fukuda BBO# 648739
Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4038
tsuyoshi.fukuda@cityofboston.gov


10



# CITY OF BOSTON
# LAW DEPARTMENT

City Hall, Room 615
Boston, MA 02201

THOMAS M. MENINO
*Mayor*

MERITA A. HOPKINS
*Corporation Counsel*

January 31, 2006

Winston Kendall, Esq.
136 Warren Street
Roxbury, Massachusetts 02119

      Re:    *Roderick Diaz v. David Higgins, et al.*
            Federal District Court Docket No. 05-10154-NG

Dear Attorney Kendall:

    Please find enclosed a copy of Defendants' Answers to Plaintiff's Interrogatories. The Defendants' Response to Plaintiff's Request for Productioon of Documents will be forthcoming.

                     Sincerely,

                     Tsuyoshi Fukuda
                     Assistant Corporation Counsel
                     (617) 635-4038

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10154-NG

RODERICK DIAZ,
     Plaintiff,

v.

DAVID HIGGINS, Individually, and, in
his capacity as Director of Central
Fleet Maintenance, City of Boston
Department of Public Works; and CITY
OF BOSTON,
     Defendants.

## DEFENDANTS' ANSWERS TO PLAINTIFF'S
## FIRST SET OF INTERROGATORIES

1.   State the name, address, job title and duties of the
     person who is supplying the answers to these
     interrogatories on behalf of the defendant, City of
     Boston.

### ANSWER TO INT. #1

Name:        David Higgins
Address:     400 Frontage Road, Boston, MA 02118
Job Title:   Director of Central Fleet Maintenance
Duties:      I oversee the maintenance of and repair for
             city fleet vehicles, including all the
             associated tasks from budget preparation to
             aiding other departments in preparing
             specifications for vehicles to be purchased
             to disposal of vehicles.

2.   Set forth in detail, the employment history of the
     plaintiff with the City of Boston, including but not
     limited to: the date of first employment; every
     discrete position which he occupied and/or job
     title; the name of every person who supervised him
     and the dates of such supervisor.

1

ANSWER TO INT. #2

Objection.  The Defendants object to Interrogatory #2 as it is overly broad and unduly burdensome.  The Defendants further object to this interrogatory because the question seeks information that is already in the plaintiff's knowledge, possession, custody and/or control.

3.   With respect to your answer to #3, supra; set forth in detail the duties of every position which plaintiff held and the compensation associated with every position.

ANSWER TO INT. #3

Objection.  The Defendants object to Interrogatory #3 because the question seeks information that is already in the plaintiff's knowledge, possession, custody and/or control.

4.   Describe every discrete episode of training which the defendant afforded to plaintiff; including but not limited to: the effective dates; the nature of the training; the place (including street address) where the training was provided; the identities of the persons who provided the training.

ANSWER TO INT. #4

Objection.  The Defendants object to Interrogatory #4 as it is overly broad, unduly burdensome, vague, ambiguous and not likely to lead to the discovery of admissible evidence.  The Defendants further object to this interrogatory because the question seeks information that is already in the plaintiff's knowledge, possession, custody and/or control.  Notwithstanding said objection, Central Fleet Maintenance employees are not required to attend any training offered through the DPW unless it is training that concerns regulatory overview (i.e. motor vehicle inspection).  Vendor representatives will also conduct training at 400 Frontage Road when new products or technology are introduced.

2

5.   Describe the process whereby individuals have been
     selected for the positions of Foreman and Acting
     Foreman at the Department of Public Works
     (hereinafter referred to as "DPW"), for every one of
     the years, 1993 through 2002, inclusive, the name,
     job title and race of every person who participated
     in such selection process and all of the criteria on
     which they relied for making selections.

ANSWER TO INT. #5

Objection.  The Defendants object to Interrogatory #5 as
it is overly broad and unduly burdensome. Notwithstanding
said objection, since August 1997, when David Higgins
began his employment at the City of Boston, there has
been no formal process for filling temporary acting
foreman positions unless there is a known long-term
absence (i.e. long-term sick leave, military service,
etc.)  Between August 1997 and present, there have been
no long-term absences that would have required a
temporary acting foreman to be assigned.

Since 1997, the process for filling a Foreman position is
as follows: A posting with an opening and closing date is
granted by the personnel department. Applications are
submitted up to the closing date and are forwarded to
Kathleen Kelley at the DPW Personnel Department.  Kelley
then forwards the applications to David Higgins who
schedules interviews for all candidates that meet the
minimum requirements for the position.  Approximately 1
hour is allotted for each interview, a set of interview
questions are either handed to each candidate or read
aloud to the candidate.  The same questions are asked of
every candidate and include questions regarding objective
and subjective managerial/supervisory issues, industry
standards and out-of service requirements.  In 1999,
Higgins and Jerry Coughlin attended the interviews and in
2001, Higgins, Kelley, Maurice Smith and Bob Silvey
attended the interviews.  Once the questions are asked
and answered, the interviewers rate the candidates,
discuss the candidates' qualifications and answers, and
rate them for a second time keeping the group discussion
in mind, and come to a decision as to who is the most
qualified candidate for the position.  Once that decision
is made, Higgins will make a recommendation to the
Commissioner, who ultimately makes the hiring decision.

6.    With regard to you answer to #5, supra, for every
      one of the years 1993 through 2002, state the name,
      address and race of every person who held the
      position(s) of: Foreman; Acting Foreman at the DPW,
      and the qualifications on which the defendant relied
      in awarding the position(s); the starting salary and
      maximum salary for every such position.

## ANSWER TO INT. #6

Objection.  The Defendants object to Interrogatory #6 as
it is overly broad, unduly burdensome, vague, ambiguous
and not likely to lead to the discovery of admissible
evidence.  Notwithstanding said objection, the following
people have been either Foreman or General Foreman at
Central Fleet Maintenance since its inception in 1997:

Maurice Gracia (General Foreman, Light Shop)
Fitzroy Prescott (Foreman, Light Shop)
James Monaghan (Foreman, Light Shop)
Paul Musto (General Foreman, Heavy Shop)
Ted Myers (Foreman, Heavy Shop) - Leave
Scott Alther (Foreman, Heavy Shop)
Bill Keene (Foreman, Heavy Shop) - Currently Retired
Al Young (General Foreman, Heavy Shop) - Currently
Retired
Horace Rider (General Foreman, Heavy Shop) - Currently
Principal Administrative Assistant of the Motor Vehicle
Management bureau.


7.    Describe in as much detail as possible, any internal
      mechanism which existed at the DPW, for any one of
      the years 1993 through 2002, through which employees
      could complain of discrimination, harassment,
      retaliation, etc. and indicate whether defendant
      made available any pre-printed forms on which
      employees could make such complaints.

## ANSWER TO INT. #7

Since 8/97, Higgins has informed every employee that he
has an open door policy for discussing any employment
issues, including claims of racial discrimination.  This
policy has been conveyed to all Central Fleet Maintenance
employees via general meetings.  He has also informed all

Central Fleet Maintenance employees that complaints can be made to directly to supervisors or to Personnel.  To my knowledge, there are no preprinted forms.

8.    For every one of the years 1993-2002, provide a breakdown of the workforce at the DPW, including the name, race, job title, salary of its employees.

ANSWER TO INT. #8

Objection.  The Defendants object to Interrogatory #8 as it is overly broad, unduly burdensome, irrelevant and unlikely to lead to the discovery of admissible evidence.

9.    Set forth in as much detail as possible, all facts which indicate that plaintiff unreasonably failed to take advantage of any internal mechanism to complain of racial harassment and racial discrimination.

ANSWER TO INT. #9

Objection.  The Defendants object to Interrogatory #9 because the question is vague and ambiguous. The Defendants further object to this interrogatory because the question seeks information that is already in the plaintiff's knowledge, possession, custody and/or control.

10.    Describe any and all discussions which defendant has had with the Union (which represented and/or represents mechanics at the DPW) in any one of the years 1997 through 2002, with regard to issues or racial discrimination and racial harassment at the DPW, giving the name, job title, race and address of every person who participated in such discussions; the place (street address) where such discussions were held and the substance of such discussions.

ANSWER TO INT. #10

Objection.  The Defendants object to Interrogatory #10 as it is overly broad, unduly burdensome, irrelevant and unlikely to lead to the discovery of admissible evidence.

11.   Describe all efforts made by the defendant, for
      every one of the years 1993-2002, to determine
      whether its selection procedures for the position of
      Foreman and/or Assistant Foreman at the DPW, had
      produced or were producing a disparate impact on
      African American or Black employees.

ANSWER TO INT. #11

Objection.  The Defendants object to Interrogatory #11 as
it is overly broad, unduly burdensome, vague, ambiguous,
irrelevant and not likely to lead to the discovery of
admissible evidence.

12.   For every one of the years 1993-2002, give the name,
      race, job title of every person who complained of:
      racial discrimination; racial harassment and/or
      retaliation.

ANSWER TO INT. #12

Objection.  The Defendants object to Interrogatory #12 as
it is overly broad, unduly burdensome, irrelevant and not
likely to lead to the discovery of admissible evidence.

13.   With respect to your answer to #12, for every
      complaint, describe any investigation conducted,
      giving the name, address and job title of the
      persons involved in conducting the investigation and
      the results/findings.

ANSWER TO INT. #13

Objection.  The Defendants object to Interrogatory #13 as
it is overly broad, unduly burdensome, irrelevant and not
likely to lead to the discovery of admissible evidence.

14.   Give the name of the person(s) who served as
      Affirmative Action Officer of the defendant for
      every one of the years 1993-2002; state the address
      of her/his office; describe the duties of the
      position and the name and job title of his/her
      supervisor.

ANSWER TO INT. #14

Objection.  The Defendants object to Interrogatory #14 as it is irrelevant and not likely to lead to the discovery of admissible evidence.  Notwithstanding said objection, I believe the current Affirmative Action Officer at the City of Boston is William Kessler, I do not know his specific job duties, or the name of his supervisor.

15.  Give the name, address of every person who filed a Claim/Charge at the MCAD against the defendant and include the Docket Number of every Claim/Charge,; name and address of the attorney for the Complainant and the nature of the disposition of every such Charge.

ANSWER TO INT. #15

Objection.  The Defendants object to Interrogatory #15 as it is overly broad, unduly burdensome, irrelevant and not likely to lead to the discovery of admissible evidence.

16.  State the name of every person who, in any one of the years 1993-2002, commenced action against the defendant, in either state or federal court, in which it was alleged that the defendant committed acts of discrimination and/or violated any of the provisions of: G.L. c. 151B; Title VII; 42 U.S.C. S. 1981.

ANSWER TO INT. #16

Objection.  The Defendants object to Interrogatory #16 as it is overly broad, unduly burdensome, irrelevant and not likely to lead to the discovery of admissible evidence.

17.  With respect to your answer to #16, state the name and address of the attorney for every such plaintiff and the nature of the disposition of every action and date thereof.

ANSWER TO INT. #17

Objection.  The Defendants object to Interrogatory #17 as it is overly broad, unduly burdensome, irrelevant and not likely to lead to the discovery of admissible evidence.

18.   Give the name, address, job title and area of expertise of every expert witness on whom the defendant expects to rely at the trial of this action; the substance of the expert opinions and the facts on which such opinions are based.

ANSWER TO INT. #18

The Defendants state that it has not yet made a decision as to whether any experts will be used as witnesses at trial.  The Defendants recognize its obligation to supplement its response if the decision is made to use such witnesses.

19.   Give the name, address, job title and race of every person interviewed by defendant or in its behalf with regard to the allegations of the instant complaint.

Answer to Int. #19

Objection.  The Defendants object to Interrogatory #19 because the question is vague and ambiguous. Notwithstanding said objection, if the plaintiff is requesting information regarding the other interviewed candidates for the positions that the plaintiff was denied, please see below:

*Nov. 2, 1999 Posting:*

James Monaghan* (HMER), 400 Frontage Road, Boston, MA
Michael Connolly (HMER), 400 Frontage Road, Boston, MA
Scott Alther (HMER), 400 Frontage Road, Boston, MA
William Coughlin (HMER), 400 Frontage Road, Boston, MA
Tim O'Leary (HMER), 400 Frontage Road, Boston, MA
John Barrett (HMER), 400 Frontage Road, Boston, MA
Luigi Mastrangelo (HMER), 400 Frontage Road, Boston, MA
Robert Gilletti (HMER), 400 Frontage Road, Boston, MA

*July 19, 2001 Posting:*

Paul Musto* (HMER), 400 Frontage Road, Boston, MA
Luigi Mastrangelo (HMER), 400 Frontage Road, Boston, MA
Scott Alther (HMER), 400 Frontage Road, Boston, MA

* James Monaghan and Paul Musto were the selected
candidates for the Foreman position.


20.  Give the name, race, job title and address of every
     person whom the defendant expects to call at trial.

ANSWER TO INT. #20

David Higgins
Director of Central Fleet Maintenance
400 Frontage Road, Boston, MA

Kathleen Kelley
Principal Personnel Officer, Department of Public Works
City Hall, 7th Floor, Boston, MA

Maurice Smith
Superintendent of the Light Shop
400 Frontage Road, Boston, MA

Robert Silvey
Superintendent of the Heavy Shop
400 Frontage Road, Boston, MA

The Defendants have not yet made a decision on all the
witnesses they intend to call at trial of this matter.
The Defendants recognize its obligation to supplement
this response when such decisions are made.


21.  Describe in as much detail as possible, the manner
     by which (or in which) the defendant measured the
     productivity of the mechanics who worked at the DPW,
     for every one of the years 1993-2002; giving the
     name, race and job title of every person who
     participated in the measuring such productivity.

ANSWER TO INT. #21

<u>Objection</u>.  The Defendants object to Interrogatory #21 as
it is overly broad, unduly burdensome, vague, ambiguous,
irrelevant and not likely to lead to the discovery of
admissible evidence.  Notwithstanding said objection,
since 2001-2002 Central Fleet maintenance employees'
productivity is measured by a Vehicle Maintenance
Information System ("Fleet Anywhere" software) which
tracks the employees' billable hours as Central Fleet
Maintenance is a Time and Maintenance Shop.

22.    Describe in as much detail as possible, all
       documents on which you relied in responding to these
       interrogatories and give the name, race, job title
       and address of every person with whom you consulted
       in the preparation of these answers and the dates of
       such consultation.

ANSWER TO INT. #22

<u>Objection</u>.  The Defendants object to Interrogatory No. 22
as it is overly broad, unduly burdensome, vague,
ambiguous, irrelevant and not likely to lead to the
discovery of admissible evidence.  Notwithstanding said
objection, the Defendants states that David Higgins did
not refer to any documents or consult with any people in
preparation of this document.

23.    Describe the salary history of the person who was
       awarded the position of MERF for which plaintiff
       applied (and was denied) from the date on which he
       was awarded the position to the present and set
       forth all the fringe benefits of that position.

ANSWER TO INT. #23

<u>Objection</u>.  The Defendants object to Interrogatory No. 23
as the language "fringe benefits" is vague and ambiguous.
Furthermore, David Higgins did not know off-hand the
following information.  The following information was
provided by Kathy Kelley.  Notwithstanding said objection
please see below:

*Nov. 2, 1999 (James Monaghan):*

See Exhibit A

*July 19, 2001 (Paul Musto):*

See Exhibit B


24.  Describe all damages suffered by the plaintiff as a
     result of the denial of his application for the
     position of MERF.

ANSWER TO INT. #24

Objection.  The Defendants object to Interrogatory #24
because the question seeks information that is already in
the plaintiff's knowledge, possession, custody and/or
control.

# EXHIBIT A

## James J. Monaghan's Salary History

**Heavy Motor Equipment Repairman**

| | |
|---|---|
| $679.60 | 1/1/99 |
| $699.60 | 7/1/99 |
| $727.26 | 12/4/99 |

**Motor Equipment Repair Foreman**

| | |
|---|---|
| $748.78 | 1/17/00 |
| $809.09 | 7/1/00 |
| $841.04 | 11/4/00 |
| $865.97 | 10/6/01 |
| $900.20 | 11/3/01 |
| $900.20+10.00 | 1/5/02  CDL Diff. Added |
| $935.83+10.00 | 11/2/02* |
| $954.35+10.00 | 5/25/03 |
| $973.24+10.00 | 7/5/03 |
| $1,011.31+10.00 | 11/1/03 |
| $1,036.35+10.00 | 10/2/04 |
| $1,077.86+10.00 | 11/6/04 |
| $1,104.56+10.00 | 10/1/05 |
| $1,148.78+10.00 | 11/5/05 |

**\*Temp. Out of Grade Prom. to General Maintenance Mechanic Frmn. effective 11/22/02 – 5/24/03.  Returned to MER Frmn. 5/25/03.**

| | |
|---|---|
| $1,011.37+10.00 | 11/22/02-5/24/03 |

EXHIBIT B

## Paul Musto's Salary History

**Heavy Motor Equipment Repairman**
$747.78+10.00    7/1/00

**Temp. Out of Grade Prom. to Motor Equipment Repair Foreman**
$841.04+10.00    11/4/00
$865.97+10.00    10/6/01
$900.20+10.00    11/3/01

**Provisionally Promoted to Motor Eq. Repair Foreman**
$900.20+10.00    12/29/01
$900.20+20.00    1/5/02  Class A CDL
$918.00+20.00    7/6/02
$954.35+20.00    11/2/02
$973.24+20.00    7/5/03
$1,011.31+20.00    11/1/03

**Temp. Out of Grade Prom. to General Maint. Mechanic Foreman**
$1,093.50+20.00    1/17/04

**Provisionally Promoted to General Maint. Mechanic Foreman**
$1,093.50+20.00    3/20/04
$1,120.58+20.00    10/2/04
$1,165.01+20.00    1/1/05
$1,193.88+20.00    10/1/05
$1,241.24+20.00    1/7/06

*SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS* 23rd *DAY OF* JANUARY, 2006.

_____
DAVID HIGGINS
Director, Central Fleet Maintenance


Objections by:


DEFENDANT, CITY OF BOSTON
Merita A. Hopkins
Corporation Counsel

By its attorney:


_____
Tsuyoshi Fukuda BBO# 648739
Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4038
tsuyoshi.fukuda@cityofboston.gov


## CERTIFICATE OF SERVICE

I, Tsuyoshi Fukuda, hereby certify that on this date I served a copy of the foregoing document by first class mail, postage prepaid to:

Winston Kendall, Esq.
136 Warren Street
Roxbury, Massachusetts 02119


1/31/06
_____
Date

_____
Tsuyoshi Fukuda


10

WINSTON KENDALL

ATTORNEY AT LAW

WINSTON D. KENDALL

136 WARREN STREET
ROXBURY, MASSACHUSETTS 02119
(617) 442-6130

17th.February, '06

Tsuyoshi Fukuda, esq.
City of Boston Law Dept.
City Hall, Room 615
Boston, Ma.02201

Re: # 05-10154-NG
      Diaz v. Higgins et al.

Dear Attorney Fukuda:

During our L.R.37.1(A) Conference of this morning, you asked that we provide you with some legal authority for the positions which we have taken relative to the plaintiff's entitlement to further answers to the first set of interrogatories.

Set forth, **seriatim,** is legal authority with regard to the dispute interrogatories as well as the manner in which plaintiff intends to use the information sought to prove his prima facie case and to oppose the affirmative defenses.

2.  The defendant objected to provide detailed information with regard to the plaintiff's employment history, inter alia, on the ground that the interrogatory sought information already in plaintiff's possession.

As we pointed out in our discussions had by telephone this morning, the fact that the plaintiff **may be in possession** of such information does not relieve the defendant of its responsibility to provide same. The law in this area is to be found in **Chiasson v. Zayada Gulf Marine Corp.,** 988 F.2d 513, 518 (5th.Cir. 1993); Cohn v. Dart Indust. Inc., 21 Fed.R.Serv. 2nd 792-3 (D.Mass.1976)  The information provided will be useful to the plaintiff in comparing his work experience to that of the white persons who were promoted over him and to show that his experience was at least comparable to, if not superior to, the successful applicants.

T.Fukuda, esq.
17th.February, '06
Page Two

3.  Our response to defendant's Objection to this interrogatory is similar
    to that set forth with regard to #2, supra.  In addition, the information
    relative to salary will be helpful in proving the plaintiff's case with
    regard to damages suffered as a result of denial of promotions.
4.  You objected to this interrogatory on the ground that the City does not
    compel the employees to take training.  We pointed out that the
    question sought to know training which was **offered to the plaintiff.**
    The answer will be helpful in comparing the training which the
    plaintiff received versus that receive by white employees, in order to
    determine whether there was discrimination in the provision of
    training.
5.  The defendant's  response to this interrogatory is inadequate because it
    fails to specify the criteria on which defendant relied for making
    selections for Foreman and Acting Foreman.  The information sought
    is necessary to determine whether the process was void of criteria and
    was arbitrary; whether it was subjective and, if so, whether the
    subjective nature of the selection process produced a disparate impact
    on members of the protected class, such as the plaintiff.   At paragraph
    25 of the Verified Complaint, the plaintiff alleged that the subjective
    employment practices of the employer produced a disparate impact.  In
    Watson v. Ft.Worth Bank & Trust Co., 487 U.S. 977 (1988), the Court
    upheld the applicability of disparate impact analysis to subjective
    employment decisions.  Under 42 USC S.2000e-2(k)(1) the plaintiff is
    entitled to show that the decisional process with regard to promotions
    caused a disparate impact on members of the protected class.  It is
    significant that liability may be imposed on the employer where there
    is proof of disparate impact, without any necessity for proving
    intentional discrimination on the part of the employer.
6.  The Objection offered to this interrogatory is without legal basis, for
    the reasons advanced with regard to #5.   The plaintiff needs the
    information to show that the subjective criteria on which the employer
    relied produced a disparate impact.  The information with regard to
    qualifications possessed by the white persons who held these
    supervisory positions could be useful in showing disparate treatment
    and that it was used by the employer, intentionally, to favour white
    persons whose qualifications were not superior to those of the plaintiff.
    The answer fails to identify the race of the officials named, even
    though the plaintiff requested such information.
8 The information sought by this interrogatory- a breakdown of the
workforce by name, race, etc. is necessary to plaintiff's showing that the
subjective  promotional practices led to a disparate impact and that the
employer, based on its own statistics was aware of such impact.

Tsuyoshi Fukuda, esq.
17th.February, '06
Page Three

The employer is required by the terms of the regulations of Title VI and by
29 CFR Part 1607 to maintain statistics showing job validation tests
performed and is also required to file EEO 1 Reports. The failure of the
employer to comply with these requirements, which it promised the
federal government it would do, in receipt for federal funds, constitutes a
breach of contract which could lead to sanctions. See, First Alabama
Bank of Montgomery v. Donovan, 692 F.2d 714 (11th.Cir., 1982).
Further, the plaintiff is a third party beneficiary of the promises made by
the employer that it would adhere to fair employment practices and may
recover under a breach of contract theory. See, Campbell v. BHA, 443
Mass. 574, 581-582 (2005). We have indicated that we will narrow the
interrogatory to the period beginning in 1997.

9.  You indicated that you could not understand this interrogatory, even
    though we attempted to explicate it, in coherent language. The
    plaintiff is entitled to learn the defendant's position, especially with
    regard to its affirmative defenses. See, Mitchell v. Savini, 25 F.R.D.
    275,276 (D.Mass., 1960). The plaintiff wishes to know **whether** the
    defendants are claiming that the plaintiff unreasonably omitted/failed
    to make use of any internal mechanism, available to him in the
    workplace, to complain about racial harassment. If, indeed, that is the
    defendant's position, then the plaintiff wants to know all of the reasons
    in support of this position.
10. The defendant has objected to informing the plaintiff of any
    discussions which it had with the Union, relative to racial
    discrimination, on the ground that it was irrelevant, etc. The law is
    that intentional negative treatment of several employees in the same
    protected class, is evidence of discrimination. Trustees of Health &
    Hospitals of Boston, Inc. v. MCAD, 65 Mass.App.Ct. 329. ('05). If
    the response is that the Union did raise the issue of racial
    discrimination against black employees, in its discussions with the
    employer, then the plaintiff may present this information to show that
    the City was aware of complaints of discrimination and omitted to take
    reasonable steps to properly investigate them and to take corrective
    action.
11. The Objection to this interrogatory is without legal basis in light of the
    requirements of 29 CFR Part 1607 et seq. which mandates that the
    employer conduct job validation studies and maintain records showing
    the findings/results. Omission of the employer to conduct such studies

T.Fukuda, esq.
17th.February, '06
Page Four

constitutes a breach of contract which plaintiff may invoke under a third
party beneficiary theory.  See the discussion re: # 5, supra.

12. The objection to this interrogatory which seeks the names, etc. of those
    who complained of racial discrimination, etc. is not well founded.  The
    case law is that plaintiff may show that there was an atmosphere of
    discrimination and that the employer mistreated, because of their race,
    members of the protected class.  This information is relevant to the
    issue of intentional discrimination.  See, Brennan v. GTE
    Govt.Sys.Corp., 150 F.3d 21, 27-28 (1st.Cir., 1998); Conway v. Electro
    Switch Corp., 825 F.2d 593 (1st., 1987); Rivers-Frisson v. S.E.
    Missouri Com. Ctr., 133 F.3d 616, 620 (8th.Cir.).  If there were other
    persons who made similar complaints, the plaintiff is entitled to seek
    to interview them and, may seek to have them testify at the trial of this
    action.  See, Koster v. TWA, Inc., 181 F.3d 24, 33-4 (it was not an
    abuse of discretion for the court to allow the admission of anecdotal
    evidence of discrimination against older employees, since "anecdotal
    evidence" may "add colour" to an employer's decisionmaking
    process).

13. The plaintiff relies on the discussion with regard to #12, supra, for the
    proposition that he is entitled to show the jury that the defendant either
    conducted no investigation into complaints of discrimination or
    perfunctory investigations and took no effective action to remedy
    discrimination, as it was/is required to do by the provisions of Title VI,
    G.L.c.151B and its own Affirmative Action Program.

14. The defendant did not indicate the date on which William Kessler
    assumed his position as Affirmative Action Officer and most glaringly,
    did not state the duties of the position.  If the information shows that
    the AAO did not properly discharge his duties and that his supervisor
    failed to notice his derelictions, that is evidence which the plaintiff
    may present to show violations of the Affirmative Action Program and
    subsequent harm to plaintiff.

15. The refusal of the defendant to supply the names, addresses of persons
    who filed Claims at the MCAD against the defendant, deprives the
    plaintiff of information which could show that the defendant was
    aware of discrimination and did little or nothing to investigate such
    claims and to prevent its reoccurrence.  Plaintiff relies on the position
    taken with regard to #'s 12 and 13, supra.  In Clifton v. MBTA, 445
    Mass. 611, ('05) the court indicated that in assessing the measure of
    punitive damages, the trial court could consider ".. the degree of
    reprehensibility of the of the defendant's conduct, citing, Labonte v.
    Hutchins & Wheeler, 424 Mass. 813, 826-7 (1997).  If the plaintiff

T.Fukuda, esq.
17th.February, '06
Page Five

could show that racial discrimination was pervasive in the workplace, by relying on a number of complainants and their anecdotal testimony as to their experience with racial discrimination,  it would be admissible on his claim of hostile work environment, in violation of G.L.c.151B(4) and on punitive damages.

16-17.  Plaintiff relies on the position taken with regard to #'s 12, 13.

21.  The Objection to this interrogatory which seeks information relative to the defendant's measurement of productivity of the mechanics, deprives plaintiff of information which could show that the employer had no identifiable criteria for evaluating its employees.  The response mentions that the employer tracks "billable hours" but does not indicate how much weight is attached to such hours in assessing the productivity of the mechanics; neither does the response address the period prior to 2001-02.

24.  The response of the defendant does not indicate whether its position is that the plaintiff suffered **no damage.**  If such is the defendant's position, the law requires that the defendant so state, without equivocation.

It is our hope that the defendant would re-consider the positions that it has taken, in light of the above and provide us with Further Answers, as soon as possible.

Thank you.

Sincerely,

W.Kendall

# CITY OF BOSTON
# LAW DEPARTMENT

City Hall, Room 615
Boston, MA 02201

THOMAS M. MENINO
*Mayor*

MERITA A. HOPKINS
*Corporation Counsel*

March 14, 2006

Winston Kendall, Esq.
136 Warren Street
Roxbury, Massachusetts 02119

Re:    *Roderick Diaz v. David Higgins, et al.*
       Federal District Court Docket No. 05-10154-NG

Dear Attorney Kendall:

Please find enclosed a copy of Defendants' Supplemental Answers to Plaintiff's Interrogatories and Defendants' Response to Plaintiff's Request for Production of Documents. As Judge Sorokin stated at the March 14, 2006 status conference please let me know which, if any, interrogatory answers you still feel are insufficient so I will be able to respond to your Motion to Strike and for Further Answers.

Sincerely,

Tsuyoshi Fukuda
Assistant Corporation Counsel
(617) 635-4038

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10154-NG

RODERICK DIAZ,
    Plaintiff,

v.

DAVID HIGGINS, Individually, and, in
his capacity as Director of Central
Fleet Maintenance, City of Boston
Department of Public Works; and CITY
OF BOSTON,
    Defendants.

## DEFENDANTS' SUPPLEMENTAL ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

2. Set forth in detail, the employment history of the plaintiff with the City of Boston, including but not limited to: the date of first employment; every discrete position which he occupied and/or job title; the name of every person who supervised him and the dates of such supervisor.

### ANSWER TO INT. #2

After review of Plaintiff's legal rationale provided within his correspondence dated February 17, 2006, and further consideration, the Defendants renew its objection to Interrogatory No. 2.  Notwithstanding said objection, see Exhibit A.

3. With respect to your answer to #3, supra; set forth in detail the duties of every position which plaintiff held and the compensation associated with every position.

1

## ANSWER TO INT. #3

After review of Plaintiff's legal rationale provided within his correspondence dated February 17, 2006, and further consideration, the Defendants renew its objection to Interrogatory No. 3.  Notwithstanding said objection, see Exhibit B.

4. Describe every discrete episode of training which the defendant afforded to plaintiff; including but not limited to: the effective dates; the nature of the training; the place (including street address) where the training was provided; the identities of the persons who provided the training.

## ANSWER TO INT. #4

After review of Plaintiff's legal rationale provided within his correspondence dated February 17, 2006, and further consideration, the Defendants renew its objection and answer to Interrogatory No. 4.  Notwithstanding said objection, the Defendants have no record of every discrete episode of training that was afforded to the plaintiff, but states that every training opportunity that was offered at Central Fleet Maintenance was offered to every employee at Central Fleet Maintenance.

5. Describe the process whereby individuals have been selected for the positions of Foreman and Acting Foreman at the Department of Public Works (hereinafter referred to as "DPW"), for every one of the years, 1993 through 2002, inclusive, the name, job title and race of every person who participated in such selection process and all of the criteria on which they relied for making selections.

## ANSWER TO INT. #5

After review of Plaintiff's legal rationale provided within his correspondence dated February 17, 2006, and further consideration, the Defendants renew its objection and answer to Interrogatory No. 5.

6. With regard to you answer to #5, supra, for every one
   of the years 1993 through 2002, state the name,
   address and race of every person who held the
   position(s) of: Foreman; Acting Foreman at the DPW,
   and the qualifications on which the defendant relied
   in awarding the position(s); the starting salary and
   maximum salary for every such position.

## ANSWER TO INT. #6

After review of Plaintiff's legal rationale provided
within his correspondence dated February 17, 2006, and
further consideration, the Defendants renew its objection
and answer to Interrogatory No. 6.

8. For every one of the years 1993-2002, provide a
   breakdown of the workforce at the DPW, including the
   name, race, job title, salary of its employees.

## ANSWER TO INT. #8

After review of Plaintiff's legal rationale provided
within his correspondence dated February 17, 2006, and
further consideration, the Defendants renew its objection
to Interrogatory No. 8.  Notwithstanding said objection
see Exhibit B.

9. Set forth in as much detail as possible, all facts
   which indicate that plaintiff unreasonably failed to
   take advantage of any internal mechanism to complain
   of racial harassment and racial discrimination.

## ANSWER TO INT. #9

After review of Plaintiff's legal rationale provided
within his correspondence dated February 17, 2006, and
further consideration, the Defendants renew its objection
to Interrogatory No. 9.

10. Describe any and all discussions which defendant has had with the Union (which represented and/or represents mechanics at the DPW) in any one of the years 1997 through 2002, with regard to issues or racial discrimination and racial harassment at the DPW, giving the name, job title, race and address of every person who participated in such discussions; the place (street address) where such discussions were held and the substance of such discussions.

ANSWER TO INT. #10

After review of Plaintiff's legal rationale provided within his correspondence dated February 17, 2006, and further consideration, the Defendants renew its objection to Interrogatory No. 10.

11. Describe all efforts made by the defendant, for every one of the years 1993-2002, to determine whether its selection procedures for the position of Foreman and/or Assistant Foreman at the DPW, had produced or were producing a disparate impact on African American or Black employees.

ANSWER TO INT. #11

After review of Plaintiff's legal rationale provided within his correspondence dated February 17, 2006, and further consideration, the Defendants renew its objection to Interrogatory No. 11.

12. For every one of the years 1993-2002, give the name, race, job title of every person who complained of: racial discrimination; racial harassment and/or retaliation.

ANSWER TO INT. #12

After review of Plaintiff's legal rationale provided within his correspondence dated February 17, 2006, and further consideration, the Defendants renew its objection to Interrogatory No. 12. Notwithstanding said objection, the Defendant, Higgins, states that he recalls cases filed by Alfonso Francisco and Fitzroy Prescott. Also please see Answer No. 15.

4

13. With respect to your answer to #12, for every complaint, describe any investigation conducted, giving the name, address and job title of the persons involved in conducting the investigation and the results/findings.

### ANSWER TO INT. #13

After review of Plaintiff's legal rationale provided within his correspondence dated February 17, 2006, and further consideration, the Defendants renew its objection to Interrogatory No. 13.

14. Give the name of the person(s) who served as Affirmative Action Officer of the defendant for every one of the years 1993-2002; state the address of her/his office; describe the duties of the position and the name and job title of his/her supervisor.

### ANSWER TO INT. #14

After review of Plaintiff's legal rationale provided within his correspondence dated February 17, 2006, and further consideration, the Defendants renew its objection and answer to Interrogatory No. 14. Notwithstanding said objection, Arlyne Grant held the position of Affirmative Action Officer between 7/6/94 and 2/5/00 and Vivian Leonard held the position between 2/5/00 to present. The office is located in Boston City Hall.

15. Give the name, address of every person who filed a Claim/Charge at the MCAD against the defendant and include the Docket Number of every Claim/Charge,; name and address of the attorney for the Complainant and the nature of the disposition of every such Charge.

### ANSWER TO INT. #15

After review of Plaintiff's legal rationale provided within his correspondence dated February 17, 2006, and further consideration, the Defendants renew its objection to Interrogatory No. 15 and further object to the extent that this information is equally available to the plaintiff. Notwithstanding said objection, the Defendants answer that to the best of their knowledge,

the following lawsuits were filed alleging race
discrimination against the Department of Public Works
between 1997 and 2002:

1. <u>Roderick Diaz v. COB et al.</u>, 04-5507
2. <u>Fitzroy Prescott v. David Higgins, Jerry Coughlin
   and COB</u>, 02BEM03296
3. <u>Marchelle Williams v. COB</u>, 05BEM0669
4. <u>Alfonso Francisco v. COB Public Works</u>, 97-BEM3430
5. <u>Jacques Dady Jean v. Public Works Dept.</u>, 97-BEM003
6. <u>Edward Johnson v. COB Public Works</u>, 02BEM02719
7. <u>Rena Kaplan v. COB Public Works</u>, 97BEM0256
8. <u>Daranino Porter v. COB</u>, 99-132998
9. <u>Lincoln Ralph v. BPW</u>, 03BEM00153
10. <u>Keith Martin v. BPW</u>, EEOC 161990267


16. State the name of every person who, in any one of the
years 1993-2002, commenced action against the defendant,
in either state or federal court, in which it was alleged
that the defendant committed acts of discrimination
and/or violated any of the provisions of: G.L. c. 151B;
Title VII; 42 U.S.C. S. 1981.

<u>ANSWER TO INT. #16</u>

After review of Plaintiff's legal rationale provided
within his correspondence dated February 17, 2006, and
further consideration, the Defendants renew its objection
to Interrogatory No. 16.  Notwithstanding said objection,
see Answer No. 15.


17. With respect to your answer to #16, state the name
and address of the attorney for every such plaintiff and
the nature of the disposition of every action and date
thereof.

<u>ANSWER TO INT. #17</u>

After review of Plaintiff's legal rationale provided
within his correspondence dated February 17, 2006, and
further consideration, the Defendants renew its objection
to Interrogatory No. 17.

21. Describe in as much detail as possible, the manner by which (or in which) the defendant measured the productivity of the mechanics who worked at the DPW, for every one of the years 1993-2002; giving the name, race and job title of every person who participated in the measuring such productivity.

ANSWER TO INT. #21

After review of Plaintiff's legal rationale provided within his correspondence dated February 17, 2006, and further consideration, the Defendants renew its objection and answer to Interrogatory No. 21.

24. Describe all damages suffered by the plaintiff as a result of the denial of his application for the position of MERF.

ANSWER TO INT. #24

After review of Plaintiff's legal rationale provided within his correspondence dated February 17, 2006, and further consideration, the Defendants renew its objection to Interrogatory No. 24.

*As to Interrogatory Nos. 2, 3, 8*

> *SIGNED UNDER THE PAINS AND PENALTIES OF*
> *PERJURY THIS* *14Th* *DAY OF* *MARCH* *,*
> *2006.*

Kathleen Kelley
Principal Personnel Officer
Department of Public Works

8

*As to Interrogatory Nos. 12, 15, 16*

> *SIGNED UNDER THE PAINS AND PENALTIES OF*
> *PERJURY THIS* __14th__ *DAY OF* __March__ ,
> *2006.*

Barbara Schaffer
City of Boston Law Dept.
Litigation Paralegal

9

*As to Interrogatory No. 14*

*SIGNED UNDER THE PAINS AND PENALTIES OF
PERJURY THIS  1  DAY OF  March  ,
2006.*

William Kessler
Director of Personnel and Training
Office of Human Resources

Objections by:


DEFENDANT, CITY OF BOSTON
William F. Sinnott
Corporation Counsel

By his attorney:

Tsuyoshi Fukuda BBO# 648739
Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4038
tsuyoshi.fukuda@cityofboston.gov

## CERTIFICATE OF SERVICE

I, Tsuyoshi Fukuda, hereby certify that on this date I
served a copy of the foregoing document by first class
mail, postage prepaid to:

Winston Kendall, Esq.
136 Warren Street
Roxbury, Massachusetts 02119

3|14|06
_____
Date

Tsuyoshi Fukuda