**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**CIVIL ACTION NO. 05-10154-NG**

RODERICK DIAZ

v.

DAVID HIGGINS, Individually,
and, in his capacity as Director
of Central Fleet Maintenance,
City of Boston Department of
Public Works; and CITY OF BOSTON

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

David Higgins ("Higgins") and the City of Boston ("City"), (collectively referred to as "Defendants"), move for summary judgment as to both counts of Plaintiff's, Roderick Diaz ("Plaintiff"), complaint. The Defendants are entitled to summary judgment because Plaintiff has no reasonable expectation of establishing at trial a prima facie case of: (1) discrimination, Counts I, ¶32(a) and II, ¶34(a);[1] (2) retaliation under G. L. c. 151B, §4(4) or Title VII, Counts I, ¶ 32(b) and II, ¶¶ 34(b), (d); (3) tortious contract interference, Count I, ¶32(d); and (4) violation of 42 U.S.C. § 1981, Counts I, ¶32(c)

---

[1] The Defendants are also entitled to summary judgment as a matter of law as to these counts because they raise G. L. c. 151B, §4 claims which were not filed with the Massachusetts Commission Against Discrimination in accordance with G. L. c. 151B, §§ 5-9, and therefore, are not properly before this Court.  See *Powers v. Grinnell Corp.*, 915 F.2d 34, 37 (1st Cir. 1990); *Commonwealth of Massachusetts v. Bull HN Information Systems, Inc.*, 143 F.Supp.2d 134, 158 (D.Mass. 2001).

and II, ¶34(c).  Moreover, the Plaintiff is unable to rebut the assertion that the Defendants' decision not to promote him was lawful and non-discriminatory.  Finally, summary judgment is appropriate because there are no disputes of material fact.

## PROCEDURAL BACKGROUND[2]

On or about December 19, 2001, Plaintiff filed a retaliation claim under G. L. c. 151B, 4(4) and Title VII, at the Massachusetts Commission Against Discrimination ("MCAD").  *SOF*, ¶46.  The 2001 MCAD Complaint alleged the Defendants did not promote Plaintiff in retaliation for filing a complaint with MCAD in 2000.[3]  *SOF*, ¶46.  Plaintiff removed the matter to Superior Court prior to receiving a decision from MCAD.  *SOF*, ¶47.  The Plaintiff's Superior Court Complaint ("Plaintiff's Complaint") raised the retaliation claims filed in MCAD, in addition to other claims.  *SOF*, ¶47.  The Defendants removed the matter to this Court, and promptly filed motions to dismiss.  *SOF*, ¶48.  The motions were allowed in part and denied in part.  *SOF*, ¶48.

Presently before this Court are two Counts – I is against Higgins and II is against the City.  *SOF*, ¶47.  Count I, ¶32, raises four claims: (a) G. L. c. 151B, § 4; (b) G. L. c. 151B, §

---

[2] The Defendants hereby incorporate by reference the facts set forth in the attached *Defendants' Local Rule 56.1 Statement of Facts and Supporting Documentation* ("*SOF*").

[3] The 2000 MCAD Complaint was dismissed for lack of probable cause.  *SOF*, ¶¶ 25-26.

2

4(4); (c) 42 U.S.C. § 1981; and (d) contract interference.[4]  *SOF*, ¶47.  Count II, ¶34, raises four claims: (a) G. L. c. 151B, § 4; (b) G. L. c. 151B, § 4(4); (c) 42 U.S.C. § 1981; and (d) Title VII.  The Defendants now move for summary judgment as to all counts.

### FACTUAL BACKGROUND[5]

In 2001, Plaintiff was a Heavy Motor Equipment Repairman ("HMER") at Central Fleet Maintenance ("CFM"), a division of the City's Public Works Department ("PWD").  *SOF*, ¶¶ 4, 6, 24.  In July 2001, Plaintiff applied for a Motor Equipment Repairman Foreman ("MERF") position along with three other candidates.  *SOF*, ¶¶ 27-29.  Plaintiff was not recommended nor appointed to the position.  *SOF*, ¶43.  Plaintiff alleges Higgins did not recommend him for the MERF position because he is black.  *SOF*, ¶47.  Plaintiff also alleges that he was not recommended nor appointed as MERF in 2001 because the Defendants were retaliating against him for filing a claim of discrimination with the MCAD in 2000.[6]  *Id.*  Plaintiff believes he should have been granted the position because of his seniority status at the

---

[4] According to Judge Gertner's decision, Count I, ¶¶ 32(a)-(c) are only alive insofar as they are against Higgins in his individual capacity.  Count I, ¶32(d) is alive as to Higgins in his individual and official capacity.  *SOF*, ¶48.
[5] This background is intended to provide a brief description of the facts and circumstances of this case.  For a more thorough description of the facts and circumstances, please refer to *Defendants' Local Rule 56.1 Statement of Facts and Supporting Documentation*, attached hereto and made a part hereof.
[6] MCAD dismissed this 2000 complaint for lack of probable cause.  *SOF*, ¶¶ 24-26.

3

time of the interview. *SOF*, ¶47. It is Plaintiff's contention that prior to 1999 the custom was to automatically appoint the most senior candidate to vacant positions. *SOF*, ¶47. The Plaintiff, however, shared the same seniority status as two of the other candidates, including the one who obtained the position. *SOF*, ¶44.

The record shows that as of 1997, all employees who were appointed to a position at CFM were subjected to the same interview process as Plaintiff. *SOF*, ¶¶ 57-58. Defendants maintain that CFM has never promoted or appointed an employee to a position solely on the basis of seniority. *SOF*, ¶¶ 55, 56-57. Rather, according to the union contracts of CFM employees, which Plaintiff was subject to, seniority is a consideration for purposes of hiring or promoting only if the qualifications and abilities of the employees are substantially equal. *SOF*, ¶¶ 49-50. In 2001, Higgins, along with four other individuals, interviewed each candidate, including Plaintiff, asked them the same questions, recorded their answers and made a recommendation based on the results of the interviews. *SOF*, ¶¶ 29-31. The questions sought information as to the candidates' job knowledge, experience, and education. *SOF*, ¶31. Plaintiff admits all questions were job related, fair, appropriate, and reasonable in light of the position for which he was interviewing. *SOF*, ¶¶ 32-36. He also admits that a good

supervisor needs good communication skills. *SOF*, ¶87. The Plaintiff was not recommended for the position because out of all the candidates, he was rated the least qualified. *SOF*, ¶39. Out of twenty-eight questions asked, the Plaintiff got twenty-one and a half wrong, and two of his answers were not on point. *SOF*, ¶41. The person appointed only got three questions wrong. *SOF*, ¶20. Higgins also found Plaintiff was deficient in three of the areas evaluated – leadership skills, communication skills and job knowledge. *SOF*, ¶45.

Although Plaintiff contends the Defendants never promoted him because of his race, it is undisputed that, during his entire tenure at the City, Plaintiff never heard any racial comments, slurs or jokes from anyone, including Higgins. *SOF*, ¶¶ 68-69, 76-79. While Plaintiff contends the Defendants' retaliation commenced after he obtained an attorney to file the 2000 MCAD Complaint, it is undisputed that Plaintiff never told anyone about his case nor did anyone ever tell him that they were aware of his case. *SOF*, ¶¶ 59-65.

## STANDARD OF REVIEW

To prevail on summary judgment, the moving party must establish there is no genuine issue of material fact on every element of a claim and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pure Distrib., Inc. v. Baker*, 285 F.3d 150, 154 (1st Cir. 2002). Summary judgment is

appropriate when plaintiff fails to show sufficient evidence to establish an essential element of his case, on which he bears the burden of proof at trial. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999). "Once the movant avers an absence of evidence to support the nonmoving party's case, the latter must adduce specific facts establishing the existence of at least one issue that is both 'genuine' and 'material.'" *Sheinkopf v. Stone*, 927 F.2d 1259, 1261 (1st Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) and cases cited). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 869 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

In this case, Plaintiff relies on his conclusory, baseless and speculative beliefs, and is therefore, unable to meet his burden. Accordingly, because Plaintiff cannot meet his burden or raise a genuine dispute of fact, Defendants are entitled to summary judgment as a matter of law.

**ARGUMENT**

1.   **Defendants are entitled to summary judgment as a matter of law as to Counts I, ¶32(a) and II, ¶34(a).**

Plaintiff's failure to allege state race discrimination claims in the 2001 MCAD Complaint, preclude him from presenting them now to the Court.  Plaintiff's 2001 MCAD Complaint alleges the Defendants retaliated against him in violation of G. L. c. 151B, 4(4) and Title VII.  *SOF*, ¶46.  It was not until Plaintiff filed a Complaint in Superior Court that he raised claims of racial discrimination under G. L. c. 151B, § 4.  *SOF*, ¶47.  Failure to file these claims with MCAD prior to this suit is a violation of the prerequisites to bring such claims, and therefore, Defendants are entitled to judgment.  G. L. c. 151B, §§ 5-9.  See *Powers v. Grinnell Corp.*, 915 F.2d 34, 37 (1st Cir. 1990); *Commonwealth of Massachusetts v. Bull HN Information Systems, Inc.*, 143 F.Supp.2d 134, 158 (D.Mass. 2001).

Massachusetts's anti-discrimination law treats retaliation as a "separate and independent cause of action." *Wright v. CompUSA, Inc.*, 352 F.3d 472, 477 (1st Cir. 2003).  Chapter 151B requires an employee to file an administrative charge as a prerequisite to commencing a civil action based on employment discrimination.  *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir. 1996); G. L. c. 151B, §§ 5-9.  The purpose of the requirement is to provide the defendant with prompt notice of

the claim and to create an opportunity for early conciliation. *Id.;* see *Powers*, 915 at 37.  The *Lattimore* court further states:

> That purpose would be frustrated if the employee were permitted to allege one thing in the administrative charge and later allege something entirely different in a subsequent civil action.  Consequently, we have stated that, in employment discrimination cases, "the scope of the civil complaint is . . . limited by the charge filed with the EEOC and the investigation which can be reasonably expected to grow out of that charge."  *Powers*, *supra* at 38; see also *Johnson v. General Electric*, 840 F.2d 132, 139 (1st Cir. 1988).

99 F.3d at 464.  Furthermore, Chapter 151B requires the exhaustion of administrative remedies before filing a civil lawsuit.  See *Andrews v. Arkwright Mut. Ins. Co.*, 423 Mass. 1021, 1022 (1996).

In this case, the "cause of discrimination" section of the 2001 MCAD Complaint states: "Other, Paragraph 4, Retaliation." *SOF*, ¶46.  In the particulars, it states: "I believe respondent denied me the promotion, in retaliation for filing a complaint with the MCAD.  This is in violation of MGL Chapter 151B Section 4 Paragraph 4 and Title VII." *Id.*

Because retaliation is a separate and independent cause of action, Plaintiff's state race discrimination claims are beyond the scope of the administrative charge and the investigation that can reasonably be expected to grow out of that charge. *Lattimore*, 99 F.3d at 464.  Therefore, Defendants are entitled

to summary judgment as a matter of law as to Counts I, ¶32(a) and II, ¶34(a).

> 2. **Defendants are entitled to summary judgment as to Counts I, ¶¶ 32(a)-(c) and II, ¶¶ 34(a)-(d) because Plaintiff is unable to establish a prima facie case for any of these claims and is unable to prove the Defendants' non-discriminatory reason was a pretext for a discriminatory reason.**

State and federal claims of race discrimination and retaliation are governed by the *McDonnell-Douglas* three step burden-shifting test. See *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989); *Quinones v. Buick*, 436 F.3d 284, 289 n.1 (1st Cir. 2006) (citations omitted). First, the employee must establish a prima facie case of discrimination or retaliation, then the burden of production shifts to the employer to present a legitimate non-discriminatory reason, and finally the burden shifts back to the employee to prove that the employer's reason was pretext to cover up the real discriminatory reason. *Id.* at 289.

> a. **Counts I, ¶¶ 32(a) and (c) and II, ¶¶ 34(a), (c) and (d), must be dismissed as Plaintiff is unable to establish a prima facie case of race discrimination.**

The evidence shows Plaintiff was not promoted because he was not qualified for the job, and thus, he has no reasonable likelihood of establishing a prima facie case of race

discrimination.[7]

To establish a prima facie case of race discrimination, Plaintiff must show: "(1) he is within a protected class; (2) he applied for and was qualified for the position that the employer was seeking to fill; (3) despite his qualifications he was rejected; and (4) after his rejection, the position was filed by a person of plaintiff's qualifications, not within the protected class."  *Rossy v. Roache Prods.*, 880 F.2d 621, 624 (1st Cir. 1989) (citations omitted).  To sustain claims of discrimination as to Higgins in his individual capacity, Plaintiff must show that Higgins had the "requisite intent to discriminate." *Beaupre v. Cliff Smith & Assoc.*, 50 Mass. App. Ct. 480, 494 n.23 (2000).

It is undisputed that the reason Plaintiff was not granted the position was because he was not qualified.  The interview was conducted by the same people, in the same manner and all candidates were asked the same questions – questions which Plaintiff admitted were fair, reasonable and wholly related to the position for which he was applying.  Plaintiff got twenty-one and a half questions wrong out of twenty eight.  The individual who was recommended and appointed to the position only got three questions wrong.  Moreover, even if the Court

---

[7] In including an argument as to the state race discrimination claims, the Defendants are in no way conceding they are properly before this Court.

grants some credence to Plaintiff's assertion that the custom was to hire by seniority, Plaintiff's claim nonetheless fails because the individual appointed had the same seniority.

There is not one single fact in the record which sustains the City or Higgins discriminated against the Plaintiff because of his race. In fact, Plaintiff testified that during his entire tenure at the City he never heard anyone say any racist comments, call him a racist name or use racial slurs. Although Plaintiff testified he took Higgins's criticism as to Plaintiff's lack of communication skills as a racist comment, Plaintiff specifically testified Higgins never said anything racist to him. *SOF*, ¶¶ 68-69.

In this case, Plaintiff seeks to sustain a claim of race discrimination solely on his conclusory allegations, improbable inferences, and unsupported speculations. There is also no evidence of disparate treatment because of his race. Rather, the record shows that he was awarded an interview, was asked the same questions and was provided the same opportunities as the white employees to apply and interview for the job. Plaintiff's failure to obtain the 2001 promotion was based solely on his poor performance at the interview, for which he admits he did not prepare. *SOF*, ¶35.

Therefore, because the Plaintiff is unable to establish a prima facie case of race discrimination as to his state and

11

federal claims and because there are no disputes as to any material fact, the Defendants are entitled to summary judgment as a matter of law.

> **b.    Judgment for Defendants should enter as to Counts I, ¶32(b) and II, ¶¶ 34(b) and (d) because Plaintiff is unable to establish a prima facie case of retaliation.**

Plaintiff cannot show that, as a result of his filing a complaint with MCAD in 2000, he suffered adverse employment action or that this adverse action was causally linked to it. To establish a state or federal claim of retaliation Plaintiff must show: "(1) [he] undertook protected conduct; (2) [he] suffered an adverse employment action; and (3) the two were causally linked." *Noviello v. City of Boston*, 398 F.3d 76, 88 (1st Cir. 2005). Adverse employment action may consist of obvious acts like failure to hire but it may also consist of less obvious acts like harassment which create a hostile work environment. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116-117 (2002). However, for a hostile work environment to qualify as an adverse employment action it must be repeated conduct and it depends on the cumulative effect of the acts; a single act may not be actionable on its own. *Id.* at 115.

Plaintiff, through his complaint and deposition testimony, alleges various forms of retaliation which he claims arise from his filing of a complaint with MCAD in 2000. The first

12

allegation is that as of 2000, he was no longer appointed to the acting foreman position. However, Plaintiff has no proof of that claim. According to his own testimony, he never served for more than three consecutive days in that position. Therefore, in accordance with his union contract, he was never compensated for serving as acting foreman. *SOF*, ¶¶ 49, 51-54. As such, other than Plaintiff's conclusory allegations, there is no record showing that after 2000 Plaintiff was no longer appointed as acting foreman. Moreover, even if Plaintiff was not appointed as acting foreman after 2000, he did not suffer an adverse employment action as he did not lose wages nor was he subjected to a hostile work environment. *Id.* He admits to not informing anyone of his desire to be appointed to the acting foreman position or of his disappointment in no longer obtaining the appointment. *SOF*, ¶¶ 59-62, 66.

Plaintiff also claims he was retaliated against when Higgins did not recommend and the City did not appoint him to the 2001 MERF position. However, the undisputed record shows Plaintiff was not the most qualified candidate for that position. The Plaintiff was subjected to the same oral interview as the other three candidates, and all other employees who had been appointed or hired at CFM. An interview process which the Plaintiff described as fair and reasonable. Out of all the candidates, Plaintiff scored the lowest by getting

twenty-one and a half questions wrong out of twenty eight. The person ultimately appointed only got three questions wrong. Although Plaintiff may argue that he should have nonetheless gotten the job because of his seniority level and past custom, he has no evidence to show that he had a higher seniority level than the person appointed or that the past custom was to appoint according to seniority level. In fact, the undisputed record shows that Plaintiff and the person appointed shared the same seniority date and that seniority was only a consideration if the qualification and abilities of the candidates were substantially the same.

Plaintiff also claims Defendants' failure to provide him with overtime opportunities was a form of retaliation. Again, however, this contention is only supported by Plaintiff's conclusory allegations. The record shows Plaintiff admits to having received overtime during snow emergencies, as well as other instances. *SOF*, ¶¶ 80-85. The record also shows Plaintiff turned down overtime opportunities. *Id.* Plaintiff's unsupported speculations that he was not awarded overtime because of his race or his 2000 MCAD complaint are insufficient to establish a claim of retaliation.

Plaintiff's retaliation claims are not supported by the record because he cannot prove that he suffered any adverse employment actions. He cannot show that Higgins had the

14

requisite intent to retaliate against him or that he did retaliate against him. Nor can he show retaliation from the City. Plaintiff is also unable to show he was retaliated against by being subjected to a hostile work environment. For instance, the record shows Plaintiff continued to arrive early at work, eat in the communal lunchroom, watch TV and spend time with the other employees. *SOF*, ¶ 88. He also did not look for other jobs after not receiving the 1999 or 2001 promotions. *SOF*, ¶¶ 74-75. On this record, no reasonable jury could conclude that the Defendants retaliated against the Plaintiff.

In addition, even if Plaintiff is able to establish the first two prongs of his retaliation claims, he is unable to show a casual link between two. By Plaintiff's own admission, he never told anyone he hired an attorney or filed a case with MCAD. Plaintiff also admitted no one ever mentioned to him the MCAD case. Accordingly, the Defendants are entitled to summary judgment as a matter of law as to Plaintiff's state and federal retaliation claims.

> **c. Summary judgment is appropriate because Plaintiff cannot prove Defendants' legitimate, non-discriminatory reason was a pretext.**

As discussed above, if the Plaintiff meets his burden of establishing a prima facie case of race discrimination and retaliation, the burden of production shifts to the Defendants to articulate a legitimate, non-discriminatory reason for their

15

actions. See *Patterson*, 491 U.S. at 186; *Quinones*, 436 F.3d at 289 n.1 (citations omitted). Once the employer meets its burden of production, the employee must prove the articulated reason was a pretext to conceal the real discriminatory reason. *Id.* In examining the third stage, the Court's "focus [is] on whether the employer believed that its proffered reason was credible." *Shorette v. Rite Aid of Maine, Inc.*, 155 F.3d 8, 13 (1st Cir. 1998).

The record shows Defendants have met their burden of production as to a legitimate, non-discriminatory reason. Defendants have provided the interview results and the notes of the interviewing panel showing that Plaintiff's performance at the job interview was poor and that he was not the most qualified candidate. The record is also replete with facts and supporting documentation showing Plaintiff had the same opportunities as white employees, and in certain instances, voluntarily gave them up. The record shows that at no time were any comments made to Plaintiff with regard to his race, and at no time was he ever treated differently because of it. As such, the Defendants contend the record presented substantially satisfies their burden of production, thereby shifting the burden of persuasion back to the Plaintiff.

Here, the Plaintiff cannot rebut the Defendants' legitimate, non-discriminatory reason not to promote Plaintiff

16

to the MERF 2001 position.  The only ammunition Plaintiff has to rebut the Defendants' reason is his conclusory allegations, improbable inferences, and unsupported speculations.  Plaintiff automatically believes he is subject to discrimination because he lives in the United States.  *SOF*, ¶86.  He thinks he was not promoted and was retaliated against because he is black, yet he offers no evidence to prove these beliefs.  He admits that during his entire tenure at the City no one ever made racial comments to him or to anyone else.  He admits to failing to complain when he stopped receiving appointments to the position of acting foreman.  He also admits to being subjected to a fair and reasonable interview.  Plaintiff's beliefs that all non-blacks are racists are not enough to rebut the Defendants' legitimate reason or to survive summary judgment.

Therefore, for the foregoing reasons, and those which may be orally presented to the Court, the Defendants' motion for summary judgment as to Counts I, ¶¶ 32(a)-(c) and II, ¶¶ 34(a)-(d), must be allowed because there are no disputes of material facts and judgment should enter as a matter of law.

> **3. Higgins is entitled to summary judgment as a matter of law as Count I, ¶32(d) because the Plaintiff is unable to establish a prima facie case of contract interference.**

As Director of CFM, Higgins has the duty of interviewing candidates for vacant positions and to make recommendations for

17

appointments to the Commissioner of the PWD. *SOF*, ¶11. Plaintiff claims Higgins tortiously interfered with his contract with the City by failing to recommend him for the 2001 MERF position. The record, however, fails to support Plaintiff's blanket assertion.

To establish a claim of tortious interference, a plaintiff must prove: (1) a business relationship; (2) defendant's knowledge of the relationship; (3) defendant's intentional and malicious interference with it; and (4) plaintiff was harmed as a result of it. *Zimmerman v. Direct Federal Credit Union*, 262 F.3d 70, 76 (1st Cir. 2001) (citations omitted). Although a "defendant-supervisor is entitled to a qualified privilege in an employment-based tortious interference case (and, thus, will not be liable for employment decisions that are within the scope of his supervisory duties). . . ," he may be personally liable if there is proof of actual malice. *Id.*

Mere hostility is not proof of actual malice. *Id.* The Plaintiff must show "that malice was the controlling factor in the supervisor's interference." *Id.* Any inference as to malice must be drawn from probability and such inference "requires an affirmative showing that the actions taken by the supervisor were not derived from a desire to advance the employer's legitimate business interests." *Id.* at 76-77 (citations omitted).

In this case, the Plaintiff has no reasonable likelihood of establishing Higgins's failure to promote him was based on malice. By Plaintiff's own admission, Higgins never stated any derogatory or racial comments to him. In fact, according to Plaintiff's own testimony, the only thing Higgins "did" to him was to stop greeting him in the mornings. Personal dislike is not sufficient to show malice. See *Alba v. Sampson*, 44 Mass. App. Ct. 311, 314 (1998). Moreover, the record shows the reason Higgins did not recommend Plaintiff for the position was because of his poor performance at the job interview. Clearly choosing a candidate who obtained only three wrong answers versus twenty-one and a half out of twenty-eight is derived from a desire to advance the City's legitimate business interest – choosing the most qualified candidate. In addition, the MERF position was a supervisory position, which, as admitted by Plaintiff requires good communication skills. *SOF*, ¶ 87. Higgins's decision not to hire someone with poor communication skills is protected as it was derived from a desire to advance a legitimate business reason. Also, as argued above, Plaintiff's contention with regard to his seniority is moot as the candidate chosen had the same seniority as Plaintiff. Finally, Plaintiff is unable to show any harm as he chose to stay employed with the City until 2004, when he obtained a better paying job with better benefits. *SOF*, ¶73.

Accordingly, because Plaintiff is unable to establish a prima facie case of tortious contractual interference and because there are no issues of material facts, Higgins is entitled to summary judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, and those orally presented to the Court or in a reply brief filed subsequent to Plaintiff's opposition, if any, the Defendants, David Higgins and City of Boston, request that this Honorable Court enter summary judgment in their favor as to all counts of Plaintiff's Complaint.

Respectfully submitted,

DEFENDANTS, DAVID HIGGINS, in his official and individual capacity and CITY OF BOSTON

William F. Sinnott
Corporation Counsel

By their attorney:

/s/ Nicole Murati Ferrer
Nicole Murati Ferrer
Assistant Corporation Counsel
City of Boston Law Department
1 City Hall Plaza, Room 615
Boston, MA 02201
(617) 635-4045
BBO# 661474

**CERTIFICATE OF SERVICE**

**I hereby certify that a true copy of the above document was served upon Winston Kendall by mail.**

**2/7/07    /s/ Nicole Murati Ferrer**
**Date      Nicole Murati Ferrer**