FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT 2007 FEB 23  A 11: 53.
DISTRICT OF MASSACHUSETTS
C.A. #05-10154-NG  COURT
DISTRICT OF MASS.

RODERICK DIAZ

v.

DAVID HIGGINS ET AL.

PLAINTIFF'S RESPONSE
AND OPPOSITION TO
DEFENDANTS' L.R. 56.1
STATEMENT OF FACTS

Plaintiff hereby responds to and opposes the defendants' purported

Statement of Facts, as follows:

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted.

11. Admitted.

12. Admitted.

13. Plaintiff admits that the three persons who interviewed him in 1999
    were the white males: Higgins, Silvey and Coughlin.

14. Admitted.

15. Denied that the questions were, in fact, fair. The questions did not
    address the areas in which the defendants asserted they wanted to test,
    including experience and job knowledge. Jeremiah Coughlin, one of
    the interviewers, testified that he did not look at Diaz' performance
    evaluations. Ex.J, Tr. 16-17. Likewise, Higgins did not speak to

1

Diaz' supervisor, Ted Myers about Diaz, before making his decision to award the position.  When Coughlin appeared before Chuck Moralli, a white male and the sole interviewer in 1998, for a promotion to superintendent; Coughlin testified that he considered his certificates showing the classes which he had taken, and which were part of his application as they were in his personnel file. Ex. J, Tr.7-8.   The selection process for the position was subjective and in violation of the provisions of 29 CFR, Guidelines On Employee Selection, in that **inter alia,** they were not content-validated and could not predict that the successful applicant under this process, was likely to competently discharge the duties of the position.

16. Denied.  Higgins has submitted an Affidavit, Exhibit H, in which he testified that plaintiff's deficiencies were in the areas of: "leadership skills; communicative skills and job knowledge. 1 It is apparent that Higgins did not examine Diaz according to the criteria which he has claimed.

17. Plaintiff is unable to admit or deny this paragraph.

18. Plaintiff is unable to admit or deny this paragraph.

19. Plaintiff is unable to admit or deny this paragraph.

20. Plaintiff is unable to admit or deny this paragraph.  Higgins testified at his deposition that he did not weigh every one of the criteria equally and that a corollary of that statement was that he weighed them unequally.  Ex.H. Tr.56-57.

21. Admitted to so much of the paragraph which asserts that the position was given to James Monaghan.  Plaintiff denies the balance of the allegations as to the claimed rankings in light of the fact that Higgins' Affidavit, Exhibit H, shows that he purportedly examined Diaz on leadership skills, communicative skills and job knowledge.  Further, Monaghan did not possess job knowledge and/or experience which were comparable to Diaz'.  Monaghan had no experience in the "Heavy Shop" and used to come over to CFM from the Boston Traffic

2

Department while overtime was being performed, to learn about the
heavy equipment. Diaz, among others, would show Monaghan how
the heavy equipment worked. Ex.D, Tr.23, LL.8-24.

22. Admitted.

23. Admitted.

24. Admitted.

25. Admitted.

26. Admitted.

27. Admitted.

28. Admitted.

29. Admitted.

30. Admitted.

31. Admitted to so much of the paragraph which asserts that subjective
questions were posed, denied as to the balance. The questions were
not content-validated and had no predictive ability as to likelihood of
success in the new position of the person who was selected.

32. Admitted.

33. Admitted that the plaintiff testified that the questions were "fair".
Denied that the questions were, in fact, fair. The questions which
were subjective, were not content-validated and the entire selection
process violated the requirements of 29 CFR S.1607 producing a
disparate impact on plaintiff who is a member of the protected class.
Further, the questions were unrelated to the claimed criteria as they did
not meaningfully probe plaintiff's job knowledge and experience as a
mechanic and education in the field, as demonstrated by the numerous
classes which he took and certificates which he received. Higgins had
testified that he was aware of performance evaluations of the
candidates but that they had no role in his evaluation of the candidates
for the position. Ex.I, Higgins, Dep.I, Tr.15, Tr.16, LL. 1-8. Plaintiff
also testified that in the past there were no interviews when white
males were placed in the foreman's position but that when he, a black

3

male, applied for a position as foreman, the employer began to use the
interview process. Ex.C, Diaz Depo.I, Tr.81.

34. Admitted that plaintiff agreed that it was important, denied that
plaintiff thought it was necessary.

35. Admitted.

36. Admitted.

37. Plaintiff is unable to admit or deny this paragraph. Plaintiff relies
upon and incorporates his response to paragraph 20, **supra.**

38. Admitted to so much of the paragraph which asserts that Higgins
stated that he asked the panelists to write their thoughts about each
(sic) individual candidate. Denied as to the balance. Kathy Kelly
testified that after the interview process, the interviewers discussed
the candidates and gave their rankings to Higgins. Higgins told them
right then and there what his decision was going to be and all of the
interviewers concurred. Ex. F, Kelly Dep., Tr. 30-34.

39. Admitted that Higgins' affidavit so states.

40. Admitted.

41. Admitted that Higgins' affidavit so states.

42. Admitted that Higgins' affidavit so states.

43. Admitted that plaintiff was not recommended for the position.
Plaintiff denies so much of the paragraph which concludes that
rejection of plaintiff for the position was based solely on the interview
process.

44. Admitted to so much of the allegation that Paul Musto, a white male
was given the position. Denied as to the balance. Higgins testified
that Diaz was the most senior person who applied for the position and
that he had more seniority than Musto. Ex. H, Tr.90, Tr.91, LL.17-19.

45. Admitted.

46. Admitted.

47. Admitted.

48. Admitted.

4

49. Admitted.

50. Admitted to so much of the paragraph which indicates Kathy Kelly's reading of the union contracts. Plaintiff's denies so much of the paragraph which asserts that, in fact, seniority status is considered only if the qualifications and abilities of the employees are substantially equal. Diaz had been told by Al Young, that he (Diaz) would be the next foreman, he was right in line because he had the most knowledge and was the most senior-qualified guy in the shop. Ex. Tr. 62, 63, LL.1-10.

51. Admitted.

52. Plaintiff can neither admit nor deny. The paragraph does not indicate to whom plaintiff should have made his report. Higgins has testified that he knew that Diaz had served as an Acting Foreman. Ex.I, LL. 1-3.

53. Plaintiff can neither admit or deny this allegation, especially since the paragraph does not indicate to whom plaintiff should have made his report and failed to so report. Higgins has testified that he knew that plaintiff had served as an Acting Foreman. As Director of CFM, it was Higgins' obligation to report this information to the proper authorities. See response to #52, **supra.**

54. Admitted that plaintiff never received higher pay for work performed as an Acting Foreman. Plaintiff denies so much of the allegation which implies that it was the Plaintiff's omission to report his service as Acting Foreman to some unidentified authority or official which caused or led to his non-receipt of compensation at a higher level. See response to #52, **supra.**

55. Denied. Al Young, Superintendent, told plaintiff that he was next in line for the foreman's position because he was the senior most qualified person in the job. See, response to # 50, **supra.** The qualifications and abilities of the applicants were not substantially equal. Indeed, it cannot be disputed that plaintiff had more job

5

knowledge than James Monaghan who did not work in the Heavy
Shop and to whom plaintiff demonstrated the working of heavy
equipment when he would come over from the Traffic Dept. See
response to # 21, **supra.**

56. Plaintiff can neither admit nor deny this paragraph. Coughlin testified
that he did not know whether or not seniority had been the criteria (sic)
for promotion. Ex.J., Tr.28, LL. 7-10.

57. Denied. Jeremiah Coughlin did not experience the same interview
process as the plaintiff, in connection with his promotion. Counghlin
testified that in 1998, he was promoted from general foreman to
Superintendent. There was an application process which called for an
interview by the Director of Operations, Chuck Moralli and that was
all that was required. Coughlin testified that his job experience,
training, knowledge and education were also considered. The latter
four categories were demonstrated, according to Coughlin, by
certificates for the classes which he took and which were in his
personnel file. Coughlin's testimony indicates that he was merely
exposed to "oral questions" during the interview itself and not during a
separate proceeding. Ex.J, Tr.7, LL.17-24; Tr.8, LL.1-22. By way of
contrast, in connection with interviews of the plaintiff for the position
of Foreman, Higgins did not take into consideration, plaintiff's
training, job experience, education as demonstrated by the numerous
certificates which plaintiff submitted and many years of experience as
a mechanic, beginning in Trinidad and in Massachusetts. Ex.C, Tr.
13-26; Tr.52-54. Further, Coughlin had to persuade a single
interviewer, Chuck Moralli, as to his qualifications for the position of
Superintendent while Diaz had to persuade at least four.

58. Plaintiff can neither admit nor deny the allegations of this paragraph.
Coughlin has testified that his interview consisted solely of "oral
questions". See, response to #57, **supra.**

6

59. Denied. Diaz testified that it was Higgins who treated him poorly by "kicking him out" of the position as a Temporary Foreman after the employer learned that he had hired a lawyer in June, 2000. Ex.C, Tr.69, LL.4-19. Diaz also testified that he filed a grievance in 1999, after he was denied the position of Foreman and that thereafter, he received no more "Acting" positions and that Al Young, who continued to work at CFM in 1999, had no say in placing him (Diaz) as a Foreman. Diaz did tell Al Young about this and Young told him that "they made the decision upstairs, up in the office upstairs". Ex.C, Tr.64, LL. 16-24; Tr.65, Tr.66, LL.1-16.

60. Admitted that the superintendent would decide whom to place in a temporary position and Higgins testified that he did not know whether such decisions were made according to seniority and had never looked into this question. Ex. I, Tr. 17-18. There was no procedure which the superintendent would utilize to select persons to serve as Acting Foremen. Ex. I, Tr.16-18.

61. Admitted.

62. Admitted that Fitzroy Prescott conveyed the information to Diaz. However, Diaz testified in response to a question seeking to ascertain who "kicked him out of the office", that it was Dave Higgins who sent a Foreman, named Fitzroy Prescott who announced that he was in charge. Diaz testified that it was Prescott who told him that it was Higgins who sent him to take charge of the office. Ex.C., Tr. 85, Tr.86, LL. 1-19.

63. Admitted.

64. Admitted.

65. Admitted that the plaintiff so testified, however, Diaz also testified that after the denial of his application for promotion in 1999, he went to the union and that they went through the stages with Mr.Casazza. Diaz testified that he had his union attorney, a certain Attorney Cucuzo,

7

grieve the matter, that he met with his attorney perhaps twice and that the matter went to arbitration. Ex. D, Tr.24, L.24; Tr.25.

66. Admitted.

67. Admitted.

68. Denied. Higgins told Diaz that he lacked communication skills and wanted to school him. Diaz viewed this comment to be racist. Diaz testified that he had good English skills, he came from a foreign country and spoke English in Trinidad. Ex. D, Tr.47-51.

69. Denied. Diaz testified that Higgins made a racist statement to him. See, response to #68, **supra.**

70. Admitted to so much of the paragraph which states that plaintiff believes that Higgins is a racist because he did not appoint plaintiff to the foreman positions in 1999 and 2001, denied as to inference that the only basis for plaintiff's belief was Higgins' refusal to appoint plaintiff to the foreman position. Plaintiff also testified that Higgins made a racist comment to him, See, response to # 68, **supra.** and that Higgins does not like black people. Ex. D, Tr.44-45.

71. Admitted.

72. Admitted.

73. Admitted that plaintiff left the City in '04 to go to work for Massport. Plaintiff testified that he loved his job at the City and was a happy-go-lucky guy. However, after the discriminatory denials of promotion, he began to feel sick around Dr.M.L.King's birthday, '00, he would experience nightmares, perhaps every two weeks and continues to feel sick and depressed. Diaz said that he wanted to leave the City when he started getting sick, sick of the place. Ex.D, Tr. 57; 101-104.

74. Plaintiff admits that he testified that he did not apply for jobs outside the City after the denial in 1999 because he wanted to see what was going on and felt that he would likely try again to get the position. Ex. D, Tr. 57-58.

75. Admitted.

8

76. Admitted.

77. Denied. Plaintiff testified that Higgins made racist comments to him. See response to # 68, **supra.** Plaintiff also testified that James Monaghan, the white male who was appointed over the plaintiff to the position of foreman in 1999, approached him on two occasions, asking where's my grievance paper, where's my grievance paper. Plaintiff testified that Monaghan was being funny and also racist. Ex.D, Tr.65, LL. 9-24; Tr.66, LL.1-18.

78. Admitted.

79. Admitted.

80. Denied. Plaintiff testified that in the winter time, snow emergency, everybody is there to work. Other than a winter storm or no storm, they call the white man in first before they call the black man. Diaz explained that when he used the word "they", he was referring to Al Young, a white man. Diaz explained that they were supposed to make calls going down a list in alphabetical order but that many times they did not call. They called the wrong number on purpose and then told Diaz that they had tried to call him. This was done because Young wanted his white buddies to work. Ex.D, Tr. 86-88.

81. Admitted.

82. Admitted.

83. Denied. Plaintiff testified that he went to the union with the issue of black employees being denied overtime and grieved it. The union told him that it would make sure that he would work on the next overtime and that he would be called. However, the union was no better than the City of Boston and it did nothing. Ex.D, Tr.88-89.

84. Admitted.

85. Admitted.

86. Admitted.

87. Admitted that plaintiff so stated and that he also said that had good communication skills, Ex.D, Tr.106 and that as Acting Foreman he

distributed the jobs to the mechanics and made sure that the jobs were performed properly, supervising 5-6 persons. Diaz testified that in 1997, he worked as an Acting Foreman for one month, intermittently but was not sure how many times that he did in fact work in that capacity. Diaz also worked as an Acting Foreman in 1998 and 1999 but did not receive additional compensation. Ex. D, Tr. 29-32. Diaz could choose to whom he would give assignments because the men were working in the shop and he knew who could work faster. Diaz received no complaints; got along with the men and did his job. Ex. D, Tr. 33-34.

88. Admitted to so much of the paragraph which states that plaintiff would arrive at work some 15-20 minutes early and eat in the communal lunch room and denied as to the balance. Diaz testified that he kept his condition to himself, Ex.D., Tr.59, LL.17-22; that when he would arrive early, he would go to his area and read the newspaper waiting for work, generally alone, and that some times one or two other guys might be there. Ex.D, Tr. 59; Tr.60, LL.1-14. Plaintiff also testified that James Monaghan, who obtained the foreman's position for which plaintiff had applied in 1999, approached him saying "You want to shake my hands? I'll be the new foreman". Diaz said that the results had not come out yet. How can you be the new foreman? Monaghan repeated "You want to shake my hands?" Monaghan also came to him twice, saying where's my grievance paper, where's my grievance paper and that he felt depressed and sick. Diaz felt that Monaghan was being funny and also racist. Ex. D, Tr.65, LL.9-24; Tr.66, LL.1-18. After plaintiff was kicked out of the Acting Foreman's position and was subjected to harassment by co-workers who would approach him and tell him that he had been kicked out. Diaz did not respond and kept to himself. Ex.D, Tr.65-66; Tr.39-40.

10

Respectfully Submitted,
Plaintiff,
By his Attorney

W.Kendall
136 Warren Street
Roxbury, Ma. 02119
(617) 442-6130

## CERTIFICATE OF SERVICE

I, W.Kendall, hereby certify that on 20th.February, '07, I made service of a copy of the foregoing, first class mail, postage pre-paid on Nicole Murati Ferrer, esq., Asst.Corporation Counsel, City of Boston Law Dept., 1 City Hall Plaza, Room 615, Boston, Ma. 02201.

W.Kendall

11