UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
C.A. # 05-10154-NG

RODERICK DIAZ

v.

DAVID HIGGINS ET AL.

PLAINTIFF'S L.R. 56.1
STATEMENT OF FACTS IN
SUPPORT OF CROSS-MOTION
FOR SUMMARY JUDGMENT ON
LIABILITY AGAINST THE
CITY OF BOSTON

Pursuant to L.R.56.1, plaintiff submits the following statement of material facts:

1. The facts set forth below are undisputed and are based on certain of the Exhibits, designated B, D, F, H and Q (plaintiff's Verified Complaint) and filed by the defendants in support of their motion for summary judgment. Plaintiff relies upon and incorporates same by reference.
2. On 25th.February, '04, David Higgins, the white male Director of Central Fleet Maintenance, Department of Public Works ("DPW") of the defendant City of Boston, testified on behalf of the City of Boston at a Rule 30(b)(6) deposition (in connection with Charge # 01-BEM-10929, Diaz v. Higgins et al. filed at the MCAD) at which he identified the Notice Of Deposition and indicated that he understood what the Notice said and that he had reviewed various documents in preparation for the examination. Ex.H, LL.4, 6-7,13-15.
3. Higgins testified that there were (as of the date of the examination, 25th.February, '04, eight (8) supervisory positions at CFM: two foremen in each shop; a general foreman in each shop and two superintendents. Ex.H, Tr.33-34. Six of these individuals were white males.
4. The African American Superintendent of the Light Shop, Maurice Smith, was appointed to that position in January or February, '03. Ex.H, Tr.35, LL. 16-20.
5. Fitzroy Prescott, foreman of the Light Shop who is black was an employee when Higgins arrived. Ex.H, Tr. 36-37.
6. On 25th.February, '04, Kathy Kelley, Principal Personnel Officer of the DPW, testified at a deposition, that Prescott became a permanent foreman by operation of Ch.282 of the Civil Service Act, that his appointment became permanent on 9th.September, 1998 and that the criterion was time served in a position. Kelley had no direct input into that process. Ex.F, Tr.18-19. Kelley is in charge of all personnel

1

matters for the DPW, ranging from hiring, disciplinary actions, promotions and job postings. Ex.F, Tr.7-8.

7. Higgins testified that in connection with the plaintiff's interviews for the position of foreman in 1999 and 2001, the candidates were asked a number of questions which were designed to test: education, job knowledge and experience. Ex.H, Tr. 55.
8. Higgins testified that he did not think that there was an underrepresentation of black persons in supervisory positions. Ex.H,. Tr.41-42.
9. As of the time of the second interview of the plaintiff, in December, 2001, no black person had been appointed to a supervisory position at CFM by operation of the said interview process which had been devised by Higgins. There was a single black supervisor at CFM, Fitzroy Prescott, who was not appointed through Higgins' interview system but rather by operation of the civil service statute.
10. The official posting for the position of MERF for which plaintiff applied, contained an "Affirmative Action" Statement, which Higgins said meant that the City of Boston is an equal opportunity employer. Ex.H, Tr. 46-49.
11. Kathleen Kelley testified that the City of Boston had Affirmative Action Guidelines and an Affirmative Action Plan and that the Affirmative Action Officer, William Kessler, a white male, had an office at Room 612 of City Hall. Ex.F, Tr. 13
12. Kelley testified that she was familiar with the Affirmative Action Guidelines of the EEOC, that she has read them in the course of her employment but did not know whether the Guidelines contain language which addresses employee selection and breakdown of employees by race. Ex.F, Tr.24-25.
13. Kelley testified that she did not know what the EEO Guidelines on Employee Selection say and that she has never spoken to Mr.Kessler as to what the Guidelines require of the City of Boston. Ex.F, Tr. 25, LL.17-24; Tr.26, LL.1-2.
14. Kelley testified that she did not know whether there was an imbalance as between the number of black versus white supervisors. Ex.F, Tr. 19-22 and that it was not part of her job to know the racial breakdown of supervisory officials in the various departments. Ex.F, Tr. 23, LL. 2-9.
15. As part of her job description, Kelley tracks all racial quotas which are then compiled by the City's office of Human Resources. Kelley would compile a list of names of employees by race and job title and would provide that information to the Department of Human Resources at least once per year. Ex.F, Tr. 8-9.
16. The measures which Kelley's office takes to ensure that there is no racial discrimination in CFM involves Kelley's review of any transactions made by managers in the hiring or disciplinary process. Ex.F, Tr. 14; Tr.15.

17. Kelley does not use any documents, guidelines or memoranda to help her in determining whether there is a problem with racial discrimination in a decision made within CFM. Kelley uses her own knowledge. Ex.F, Tr. 15, LL.10-24; Tr.16.
18. With regard to her input into the selection process used to choose the successful applicant for the positions of MERF for which plaintiff applied, Kelley's role was serving on the interview panel. Kelley had no role to play until the Commissioner approved the recommendation and she processed the paperwork. Ex.F, Tr.28, LL.16-24; Tr.29; Tr.30.
19. Kelley never spoke to anyone at the Human Resources Department ("HR") or the office of Affirmative Action as to whether these selection practices were discriminatory or not. Ex.F, Tr.41, LL.7-13.
20. Kelley had no concern, whatsoever, that the method used to select the foreman may have been discriminatory. Ex.F, Tr.44; Tr.45.
21. Kelley reviewed the DPW's personnel numbers, including the making of a determination of the race of employees in the heavy and light garages. Ex.F, Tr.12.
22. No black person, as of December, '01, had been appointed as supervisor at CFM by operation of the Selection Procedures which Higgins had implemented.
23. The Selection Procedures implemented by Higgins for supervisory positions at CFM, as of December, '01, resulted in a less than 80% success rate for black applicants (as compared to white applicants) and had a disparate impact on black applicants.
24. Higgins did not consider any changes to the selection process used to appoint Monaghan and Musto (to the positions for which the plaintiff had applied) because it works very well. Ex.H, Tr.86, LL.9-23.
25. Plaintiff is black and a member of the protected class.
26. The Commissioner of the DPW, the appointing authority, did not consult with the Director of HR. to determine whether the selection procedure which was used, comported with fair employment practice requirements of the EEOC; with the provisions of the Employee Handbook or whether it would produce a disparate impact on members of the protected class. Ex.B, Response # 15.
27. The Uniform Guidelines On Employee Selection Procedures-Part 1607, provide at S.1607.2 (B), that they apply to tests and other selection procedures which are used as a basis of any employment decision.
28. The Uniform Guidelines at 29 CFR S.1607.5 (B), **inter alia,** require: Evidence of the validity of a test or other selection procedure by a criterion-related validity study should consist of empirical data demonstrating that the selection procedure is predictive of or significantly correlated with important elements of job performance.

29. The defendant City of Boston did not perform any job validation exercise with regard to the selection procedure used to fill the position of foreman in 1999 for which plaintiff applied. Ex.B, Response #14.
30. Defendant City of Boston is a recipient of federal funds and is required, as a condition of the receipt of said funds, to maintain an Affirmative Action Plan/Program, including the implementation of procedures to monitor adherence by supervisory officials and managers, to its provisions, in the enforcement of personnel procedures. Ex.B, Response #3.

Respectfully Submitted,
Plaintiff,
By his Attorney,

_____
W.Kendall
136 Warren Street
Roxbury, Ma. 02119
(617) 442-6130

## CERTIFICATE OF SERVICE

I, W.Kendall, hereby certify that on 20th February, '07, I did make service of the foregoing, first class mail, postage pre-paid on Nicole Murati Ferrer, esq., City of Boston Law Dept., 1 City Hall Plaza, Room 615, Boston, Ma. 02201.

_____
W.Kendall

4