UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10154-NG

---

RODERICK DIAZ

v.

DAVID HIGGINS, Individually,
and, in his capacity as Director
of Central Fleet Maintenance,
City of Boston Department of
Public Works; and CITY OF BOSTON

---

## DEFENDANTS' OBJECTION TO MAGISTRATE JUDGE SOROKIN'S REPORT AND RECOMMENDATIONS ON CROSS MOTIONS FOR SUMMARY JUDGMENT

David Higgins and the City of Boston, (collectively referred to as "Defendants"), respectfully partially object to Magistrate Judge Sorokin's *Report and Recommendations on Cross Motions for Summary Judgment* ("Sorokin's Recommendations"), dated July 19, 2007. Specifically, the Defendants object to the recommendation to deny their motion for summary judgment on Plaintiff's retaliation claim based upon the allegation Defendants' failed to place Plaintiff in the acting foreman position after April or May of 2000. The summary judgment record is devoid of any proof that Defendants ceased to place Plaintiff in the acting foreman position after he obtained an attorney to grieve the 1999 rejection, and therefore, they are

entitled to summary judgment on that count as well.  In further support of their objection, the Defendants state as follows:

    1.    To establish a state or federal claim of retaliation Plaintiff must show: "(1) [he] undertook protected conduct; (2) [he] suffered an adverse employment action; and (3) the two were causally linked." *Noviello v. City of Boston*, 398 F.3d 76, 88 (1st Cir. 2005).  Here, Plaintiff cannot show he suffered an adverse employment action or that it was causally linked to his protected conduct.

    2.    After Plaintiff was denied the 1999 MERF position, he, arguably, engaged in two types of "protected conduct."  The first was when he filed a grievance through his union in 1999.  The second was when he hired an attorney in 2000 to file a complaint with the MCAD.

    3.    The record shows Plaintiff based his retaliation claim upon the second instance of protected conduct – meaning when he hired an attorney in 2000 to file a claim with the MCAD for the 1999 rejection.  Sorokin's Recommendations are also based on this second instance of protected conduct.

    4.    According to the Plaintiff, as of April or May of 2000 he was no longer appointed to the acting foreman position because he hired an attorney to file an MCAD complaint for the 1999 rejection.

5.   Plaintiff further claims this alleged retaliatory act occurred when, in either April or May of 2000, another black male, Fitzroy Prescott, informed Plaintiff Prescott would now be the acting foreman.

6.   In Sorokin's Recommendations, credit was given to the Plaintiff's contention because it was found of "significance" that the appointments to the acting foreman position ceased on April or May of 2000, *after* Plaintiff hired an attorney.

5.   However, the record shows that the earliest the Defendants could have known about Plaintiff's attorney was on July 19, 2000, when Plaintiff's attorney filed the MCAD Complaint.  See Exhibit L to *Defendants' Local Rule 56.1 Statement of Facts and Supporting Documentation* ("SOF"); *SOF*, ¶ 24.

6.   Moreover, because the Plaintiff never informed anyone at Central Fleet Maintenance or the City that he had obtained an attorney, *SOF*, ¶¶ 64-65, it is evident the Defendants did not learn of the existence of Plaintiff's attorney, or his MCAD complaint, until they received notice of it on August 3, 2000.  See Exhibit L to *SOF*.

7.   Therefore, Plaintiff's assertion that Defendants retaliated against him in April or May of 2000 when Fitzroy Prescott entered the office and told Plaintiff that he would now be the acting foreman must fail as the record shows Defendants

3

had no knowledge of Plaintiff's hiring of an attorney.  In that same vein, because the Defendants were unaware of Plaintiff's protected conduct, the alleged cessation of appointing him to the acting foreman position as of April or May of 2000 cannot be deemed an adverse action and cannot be causally linked to his protected conduct.

8.   Furthermore, the alleged cessation of appointing Plaintiff to the acting foreman position as of April or May of 2000 cannot be deemed an adverse action because it did not materially alter the conditions of his employment.

9.   Although Sorokin's Recommendations credit Plaintiff's argument that being placed in the acting foreman position would constitute an advantage over other employees, Defendants respectfully state the record does not support this contention.

10.  For instance, Plaintiff testified that when he was working as acting foreman, he would be at the direction of the general foreman, Al Young ("Young").  Exhibit C to *SOF*, pg. 44-45:19-1.  Young would tell him which projects needed to be done and by whom.  Id.  Plaintiff would not have the authority to release employees early.  Id. at pg. 45:8-13.  If an employee had a problem with a job, Young would be the person to address.  Id. at pg. 45:16-18.  Plaintiff would not have the authority to grant time off or vacation requests.  Id. at pg. 46:3-9.  If

Plaintiff would send someone out on a road job, Young would have to be told first.  Id. at pg. 47:4-14.

11.   Plaintiff also testified his duties as acting foreman were limited to handing out work given to him by Young and making sure it "got done right."  See Exhibit D to *SOF*, pg. 30:10-15.  He would, however, have no authority, no right to discipline, and no right to change an assignment.  Id. at pg. 33:11-22.

12.   As acting foreman, Plaintiff did not have any supervisory duties.  His pay grade level was not affected as he never worked in this position for six or more consecutive days.  *SOF*, ¶¶ 49-54.  Moreover, the record shows that being appointed to such a position was of no consequence to his work in the City.  When he was interviewed for both the 1999 and 2001 positions, whether he was placed as acting foreman was of no consequence to his application.  Not only was that not a factor to his application, it was also not a factor to any other candidate's application.  *SOF*, ¶¶ 16-17, 31.

13.   The record also shows the role of "acting foreman" is not a training tool for the foreman positions for which Plaintiff interviewed.  Rather the reason why a person is appointed to be an "acting foreman" on a given day is because the duly appointed foreman is out sick or on vacation – it is an

employee covering the bare minimum responsibilities of another. See Exhibit C to *SOF*, pg. 42:17-19.

14. Additionally, it is undisputed the main reasons Plaintiff did not obtain the 1999 and 2001 positions were because of his lack of knowledge as to mechanical terms and poor performance in answering such questions during the interviews. Arguably, thus, any experience he may have gotten from being the intermediary between Young and the other employees would not have proven to be helpful as, according to Plaintiff's testimony, the acting foreman did not work on vehicles, he just handed out jobs.  Exhibit D to *SOF*, pgs. 29-30:23-5.

15. Finally, as articulated in Defendants' Memorandum of Law, the Plaintiff's retaliation claim also fails as he cannot prove that as of April or May of 2000 he was no longer appointed as acting foreman.  As a union employee, a record as to his service in such a position would be created only if he worked in it for six or more consecutive days.  Plaintiff testified he never worked as acting foreman for more than three consecutive days, and thus, the record is devoid of any evidence proving he was never appointed as acting foreman.  Regardless, because of the aforementioned, even if Plaintiff's contention is accurate, it is not sufficient to establish a claim of retaliation.

For the foregoing reasons, and those articulated in Defendants' motion for summary judgment and memorandum of law in

support thereof, the Defendants' respectfully object to the recommendation to deny their motion for summary judgment as to the retaliation claim based upon the alleged failure to appoint Plaintiff to the acting foreman position after April or May of 2000. Defendants respectfully move this Court to allow its Motion for Summary Judgment in its entirety.

Respectfully submitted,

DEFENDANTS, DAVID HIGGINS, in his official and individual capacity and CITY OF BOSTON

William F. Sinnott
Corporation Counsel

By their attorney:

**CERTIFICATE OF SERVICE**

**I hereby certify that a true copy of the above document was served upon Winston Kendall by mail.**

| | |
|---|---|
| **8/1/07   /s/ Nicole Murati Ferrer**<br>**Date     Nicole Murati Ferrer** | /s/ Nicole Murati Ferrer<br>Nicole Murati Ferrer<br>Assistant Corporation Counsel<br>City of Boston Law Department<br>1 City Hall Plaza, Room 615<br>Boston, MA 02201<br>(617) 635-4045<br>BBO# 661474 |