UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
C.A. # 05-10154-NG

| | |
|---|---|
| RODERICK DIAZ | AFFIDAVIT IN SUPPORT OF OPPOSITION TO MOTION TO |
| v. | EXCLUDE WITNESSES AND DOCUMENTS |
| DAVID HIGGINS ET AL. | |

I, W.Kendall, depose and say that:

1. I am counsel for plaintiff.
2. At the time of the Initial Pre-Trial Disclosure, I was unaware of the existence of Norman Parks, Cleo Bynoe and Keeper of Records of AFSCME Council 93.
3. At some time after the decision of the Magistrate-Judge on defendants' motion for summary judgment, I came to learn of Mr.Parks who I was informed is a Shop Steward for the union at the DPW.
4. Mr.Parks is knowledgeable on the issue of temporary/acting appointments to the Foreman's position: that such decisions, prior to the plaintiff's first application for promotion, were made on the basis of seniority and had generally been awarded to white males; that those decisions were entirely subjective and had been made by white male supervisory officials.
5. Mr.Parks also knows of the plaintiff's two grievances raised with the union over the non-promotion and that the first of the grievances was raised after the denial of Mr.Diaz' first application in 2000. Defendants were and have been aware, for a long time, of the existence of Mr.Parks and of his knowledge of the unfair employment practices since Parks was involved in the processing of the grievances, one of which went all the way to arbitration where it was vehemently opposed by the City of Boston.
6. At his deposition in 2004, the plaintiff in response to questioning by defense counsel, testified in sum and substance that his wife (Robin McCollum Diaz) was getting annoyed because he was constantly bringing the job home and complaining to her about the discrimination in the workplace. (Dep. Of April, 2004, Tr.94).
7. At his deposition in 2006, taken by defendants, plaintiff again testified essentially that he was going home and talking about the job to his wife and that his wife was sick because he was sick, having been rendered so by discriminatory practices on the job. Tr. 64-65.
8. Plaintiff did mention Cleo Bynoe's name in his Answers to Interrogatories (Answer #1) that after Bobby Donovan, a white male had been promoted to working foreman and then retired, Bynoe, a

black male, who was the next most senior person in the shop was not appointed to fill the position but rather Bob Silvey, Superintendent, claimed that the position had been phased out. Plaintiff indicated, in Answer #2, that he might call him as a witness; and at the deposition taken by defendants also mentioned Bynoe as a person who was knowledgeable as to the discriminatory practices. Plaintiff also mentioned the name of Robert Williams, an employee of the DPW with an address at 400 Frontage Road, and indicated that he might call him as a witness at trial.

9. In the said Plaintiff's Answers to Interrogatories, # 4, plaintiff did identify his damages, stating that: he lost wages in the sum of approximately $10,400; experienced emotional distress and pain in his stomach, beginning at some time on Dr.King's birthday, '00 to Spring, '03, that he began treating with Dr.Hamilton-Mason in '02 approximately once per month and co-paid $5 per visit and that his estimated damages for emotional distress were $500,000, and that these damages were caused by continuing discriminatory conduct and retaliation of respondents and by the cover up of the facts by respondents.

10. Defendants also questioned plaintiff at the depositions about his estimate of the damages for pain and suffering and about the medication which he was taking as a result of his having consulted with his physician, Dr.Rubin.

11. I inadvertently omitted to amend the Initial Disclosure to add the names of Parks, McCollum-Diaz, Bynoe and Keeper of Records AFSCME, because my attention was focused, simultaneously, not only in opposing the defendants' Motion For Summary Judgment, in the instant case, which was accompanied by numerous exhibits and transcripts, but also in opposing summary judgment by the defendants in Prescott v. Higgins, et al. In the latter matter, after summary judgment was granted, I had to devote valuable time to preparing the Brief and Appendix on appeal to the First Circuit and to ready myself for oral argument before the First Circuit Panel on 6th.May, 2008, in No. 07-2809, Prescott v. Higgins et al.

12. Ms.McCollum-Diaz' testimony is essential on the liability question, to show that plaintiff did suffer substantial detriment and on the quantum of damages. She would testify that plaintiff complained constantly about discriminatory and retaliatory practices, that he was sick, that he had to seek medical and psychological care and attention, etc.

13. Cleo Bynoe and Norman Parks will testify as to the process for appointment to temporary/acting foreman's positions, that it was subjective and racially motivated and that plaintiff received no more acting appointments after he filed his grievances and after being ejected from the foreman's office on the orders of defendant Higgins.

14. Defendants had ample opportunity to raise the issue of alleged non-disclosure of witnesses, of whose prospective testimony they were

    quite cognizant, prior to the time of the discussions leading to the pre-trial conference.

15. Defendant has not suggested, by way of affidavit or sworn statement, any tangible harm they have suffered as a result of the alleged non-disclosure.
16. The exclusion of the prospective witnesses and the information/documents relative to damages, will seriously undermine plaintiff's case especially where the plaintiff cannot rely on testimony of fellow workers to prove his claim, the jury might infer that such information is lacking and draw negative inferences relative to plaintiff's credibility.
17. Plaintiff relies upon and incorporates: Plaintiff's Answers to Interrogatories, deposition testimony of the plaintiff and defendants and the pleadings on file in this action, including the plaintiff's submissions in support of Opposition to Summary Judgment and Cross-Motion For Summary Judgment on Liability.

                                                     /s/W.Kendall  
                                                     W.Kendall

10th.June, '08

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
C.A. # 05-10154-NG

| | |
|---|---|
| RODERICK DIAZ | AFFIDAVIT IN SUPPORT OF OPPOSITION TO MOTION TO |
| v. | EXCLUDE WITNESSES AND DOCUMENTS |
| DAVID HIGGINS ET AL. | |

I, W.Kendall, depose and say that:

1. I am counsel for plaintiff.
2. At the time of the Initial Pre-Trial Disclosure, I was unaware of the existence of Norman Parks, Cleo Bynoe and Keeper of Records of AFSCME Council 93.
3. At some time after the decision of the Magistrate-Judge on defendants' motion for summary judgment, I came to learn of Mr.Parks who I was informed is a Shop Steward for the union at the DPW.
4. Mr.Parks is knowledgeable on the issue of temporary/acting appointments to the Foreman's position: that such decisions, prior to the plaintiff's first application for promotion, were made on the basis of seniority and had generally been awarded to white males; that those decisions were entirely subjective and had been made by white male supervisory officials.
5. Mr.Parks also knows of the plaintiff's two grievances raised with the union over the non-promotion and that the first of the grievances was raised after the denial of Mr.Diaz' first application in 2000. Defendants were and have been aware, for a long time, of the existence of Mr.Parks and of his knowledge of the unfair employment practices since Parks was involved in the processing of the grievances, one of which went all the way to arbitration where it was vehemently opposed by the City of Boston.
6. At his deposition in 2004, the plaintiff in response to questioning by defense counsel, testified in sum and substance that his wife (Robin McCollum Diaz) was getting annoyed because he was constantly bringing the job home and complaining to her about the discrimination in the workplace. (Dep. Of April, 2004, Tr.94).
7. At his deposition in 2006, taken by defendants, plaintiff again testified essentially that he was going home and talking about the job to his wife and that his wife was sick because he was sick, having been rendered so by discriminatory practices on the job. Tr. 64-65.
8. Plaintiff did mention Cleo Bynoe's name in his Answers to Interrogatories (Answer #1) that after Bobby Donovan, a white male had been promoted to working foreman and then retired, Bynoe, a

    black male, who was the next most senior person in the shop was not appointed to fill the position but rather Bob Silvey, Superintendent, claimed that the position had been phased out.  Plaintiff indicated, in Answer #2, that he might call him as a witness; and at the deposition taken by defendants also mentioned Bynoe as a person who was knowledgeable as to the discriminatory practices.  Plaintiff also mentioned the name of Robert Williams, an employee of the DPW with an address at 400 Frontage Road, and indicated that he might call him as a witness at trial.

9. In the said Plaintiff's Answers to Interrogatories, # 4, plaintiff did identify his damages, stating that: he lost wages in the sum of approximately $10,400; experienced emotional distress and pain in his stomach, beginning at some time on Dr.King's birthday, '00 to Spring, '03, that he began treating with Dr.Hamilton-Mason in '02 approximately once per month and co-paid $5 per visit and that his estimated damages for emotional distress were $500,000, and that these damages were caused by continuing discriminatory conduct and retaliation of respondents and by the cover up of the facts by respondents.

10. Defendants also questioned plaintiff at the depositions about his estimate of the damages for pain and suffering and about the medication which he was taking as a result of his having consulted with his physician, Dr.Rubin.

11. I inadvertently omitted to amend the Initial Disclosure to add the names of Parks, McCollum-Diaz, Bynoe and Keeper of Records AFSCME, because my attention was focused, simultaneously, not only in opposing the defendants' Motion For Summary Judgment, in the instant case, which was accompanied by numerous exhibits and transcripts, but also in opposing summary judgment by the defendants in Prescott v. Higgins, et al.  In the latter matter, after summary judgment was granted, I had to devote valuable time to preparing the Brief and Appendix on appeal to the First Circuit and to ready myself for oral argument before the First Circuit Panel on 6th.May, 2008, in No. 07-2809, Prescott v. Higgins et al.

12. Ms.McCollum-Diaz' testimony is essential on the liability question, to show that plaintiff did suffer substantial detriment and on the quantum of damages.  She would testify that plaintiff complained constantly about discriminatory and retaliatory practices, that he was sick, that he had to seek medical and psychological care and attention, etc.

13. Cleo Bynoe and Norman Parks will testify as to the process for appointment to temporary/acting foreman's positions, that it was subjective and racially motivated and that plaintiff received no more acting appointments after he filed his grievances and after being ejected from the foreman's office on the orders of defendant Higgins.

14. Defendants had ample opportunity to raise the issue of alleged non-disclosure of witnesses, of whose prospective testimony they were

    quite cognizant, prior to the time of the discussions leading to the pre-trial conference.

15. Defendant has not suggested, by way of affidavit or sworn statement, any tangible harm they have suffered as a result of the alleged non-disclosure.
16. The exclusion of the prospective witnesses and the information/documents relative to damages, will seriously undermine plaintiff's case especially where the plaintiff cannot rely on testimony of fellow workers to prove his claim, the jury might infer that such information is lacking and draw negative inferences relative to plaintiff's credibility.
17. Plaintiff relies upon and incorporates: Plaintiff's Answers to Interrogatories, deposition testimony of the plaintiff and defendants and the pleadings on file in this action, including the plaintiff's submissions in support of Opposition to Summary Judgment and Cross-Motion For Summary Judgment on Liability.

                                              /s/W.Kendall
                                              W.Kendall

10th.June, '08

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
C.A. # 05-10154-NG

| | |
|---|---|
| RODERICK DIAZ | AFFIDAVIT IN SUPPORT OF OPPOSITION TO MOTION TO |
| v. | EXCLUDE WITNESSES AND DOCUMENTS |
| DAVID HIGGINS ET AL. | |

I, W.Kendall, depose and say that:

1. I am counsel for plaintiff.
2. At the time of the Initial Pre-Trial Disclosure, I was unaware of the existence of Norman Parks, Cleo Bynoe and Keeper of Records of AFSCME Council 93.
3. At some time after the decision of the Magistrate-Judge on defendants' motion for summary judgment, I came to learn of Mr.Parks who I was informed is a Shop Steward for the union at the DPW.
4. Mr.Parks is knowledgeable on the issue of temporary/acting appointments to the Foreman's position: that such decisions, prior to the plaintiff's first application for promotion, were made on the basis of seniority and had generally been awarded to white males; that those decisions were entirely subjective and had been made by white male supervisory officials.
5. Mr.Parks also knows of the plaintiff's two grievances raised with the union over the non-promotion and that the first of the grievances was raised after the denial of Mr.Diaz' first application in 2000. Defendants were and have been aware, for a long time, of the existence of Mr.Parks and of his knowledge of the unfair employment practices since Parks was involved in the processing of the grievances, one of which went all the way to arbitration where it was vehemently opposed by the City of Boston.
6. At his deposition in 2004, the plaintiff in response to questioning by defense counsel, testified in sum and substance that his wife (Robin McCollum Diaz) was getting annoyed because he was constantly bringing the job home and complaining to her about the discrimination in the workplace. (Dep. Of April, 2004, Tr.94).
7. At his deposition in 2006, taken by defendants, plaintiff again testified essentially that he was going home and talking about the job to his wife and that his wife was sick because he was sick, having been rendered so by discriminatory practices on the job. Tr. 64-65.
8. Plaintiff did mention Cleo Bynoe's name in his Answers to Interrogatories (Answer #1) that after Bobby Donovan, a white male had been promoted to working foreman and then retired, Bynoe, a

    black male, who was the next most senior person in the shop was not appointed to fill the position but rather Bob Silvey, Superintendent, claimed that the position had been phased out.  Plaintiff indicated, in Answer #2, that he might call him as a witness; and at the deposition taken by defendants also mentioned Bynoe as a person who was knowledgeable as to the discriminatory practices.   Plaintiff also mentioned the name of Robert Williams, an employee of the DPW with an address at 400 Frontage Road, and indicated that he might call him as a witness at trial.

9. In the said Plaintiff's Answers to Interrogatories, # 4, plaintiff did identify his damages, stating that: he lost wages in the sum of approximately $10,400; experienced emotional distress and pain in his stomach, beginning at some time on Dr.King's birthday, '00 to Spring, '03, that he began treating with Dr.Hamilton-Mason in '02 approximately once per month and co-paid $5 per visit and that his estimated damages for emotional distress were $500,000, and that these damages were caused by continuing discriminatory conduct and retaliation of respondents and by the cover up of the facts by respondents.

10. Defendants also questioned plaintiff at the depositions about his estimate of the damages for pain and suffering and about the medication which he was taking as a result of his having consulted with his physician, Dr.Rubin.

11. I inadvertently omitted to amend the Initial Disclosure to add the names of Parks, McCollum-Diaz, Bynoe and Keeper of Records AFSCME, because my attention was focused, simultaneously, not only in opposing the defendants' Motion For Summary Judgment, in the instant case, which was accompanied by numerous exhibits and transcripts, but also in opposing summary judgment by the defendants in Prescott v. Higgins, et al.  In the latter matter, after summary judgment was granted, I had to devote valuable time to preparing the Brief and Appendix on appeal to the First Circuit and to ready myself for oral argument before the First Circuit Panel on 6th.May, 2008, in No. 07-2809, Prescott v. Higgins et al.

12. Ms.McCollum-Diaz' testimony is essential on the liability question, to show that plaintiff did suffer substantial detriment and on the quantum of damages.  She would testify that plaintiff complained constantly about discriminatory and retaliatory practices, that he was sick, that he had to seek medical and psychological care and attention, etc.

13. Cleo Bynoe and Norman Parks will testify as to the process for appointment to temporary/acting foreman's positions, that it was subjective and racially motivated and that plaintiff received no more acting appointments after he filed his grievances and after being ejected from the foreman's office on the orders of defendant Higgins.

14. Defendants had ample opportunity to raise the issue of alleged non-disclosure of witnesses, of whose prospective testimony they were

    quite cognizant, prior to the time of the discussions leading to the pre-trial conference.
15. Defendant has not suggested, by way of affidavit or sworn statement, any tangible harm they have suffered as a result of the alleged non-disclosure.
16. The exclusion of the prospective witnesses and the information/documents relative to damages, will seriously undermine plaintiff's case especially where the plaintiff cannot rely on testimony of fellow workers to prove his claim, the jury might infer that such information is lacking and draw negative inferences relative to plaintiff's credibility.
17. Plaintiff relies upon and incorporates: Plaintiff's Answers to Interrogatories, deposition testimony of the plaintiff and defendants and the pleadings on file in this action, including the plaintiff's submissions in support of Opposition to Summary Judgment and Cross-Motion For Summary Judgment on Liability.

                                               /s/W.Kendall
                                               W.Kendall

10th.June, '08